IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NIGEL BLISS and DAYNA BLISS, as
individuals and as guardians *ad litem*, on
behalf of J.B., a minor, and E.B., a minor,

                Plaintiffs,

     v.

ADEBIMPE ADEWUSI, KEYVAN
ABTIN, PATRICK BRAY, AUBREY
FEAR, SHAWN GOODMAN, KATHRYN
GREENE, BRADLEY LEIKEM,
STOKELY RODRIGUEZ, LEGACY
EMANUEL HOSPITAL & HEALTH
CENTER DBA CARES NORTHWEST,
LEGACY EMANUEL HOSPITAL &
HEALTH CENTER DBA RANDALL
CHILDREN'S HOSPITAL AT LEGACY,
CLACKAMAS COUNTY SHERIFF'S
OFFICE, CHILD EYE CARE
ASSOCIATES LLC, CLACKAMAS
COUNTY, and STATE OF OREGON by
and through its agency DEPARTMENT
OF HUMAN SERVICES and the CHILD
PROTECTIVE SERVICES DIVISION
thereof,

                Defendants.

No. 3:23-cv-00650-HZ

OPINION & ORDER

Andrew C. Lauersdorf
Janis C. Puracal
Byron C. Lichstein
Maloney Lauersdorf & Reiner, PC
1111 E Burnside St, Ste 300
Portland, OR 97214

Attorneys for Plaintiffs

Misha Isaak
Michael Paul Rubin
Stoel Rives LLP
760 SW 9th Ave, Ste 3000
Portland, OR 97205

Scott C. Ciecko
Clackamas County Counsel
Public Services Bldg
2051 Kaen Rd
Oregon City, OR 97045

Dirk L. Pierson
Oregon Department of Justice
Trial Division, Torts Section
1162 Court St NE
Salem, OR 97301

Troy S. Bundy
Taylor B. Lewis
Hart Wagner, LLP
1000 SW Broadway, Ste 2000
Portland, OR 97205

Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiffs bring federal and state-law claims against Defendants, alleging that Defendants instigated an unfounded criminal prosecution of Plaintiff Nigel Bliss for child abuse and wrongfully initiated custody proceedings with respect to Nigel and Dayna Bliss's two children. There are four categories of Defendants in this case. Defendants Legacy Emanuel Hospital

(doing business as CARES Northwest and Randall Children's Hospital), Keyvan Abtin,

Adebimpe Adewusi, and Stokely Rodriguez will be referred to as the Hospital Defendants.

Defendants Child Eye Care Associates LLC and Shawn Goodman will be referred to as the Eye

Care Defendants. Defendants Clackamas County, Clackamas County Sheriff's Office, Patrick

Bray, and Bradley Leikem will be referred to as the County Defendants. And Defendants State of

Oregon (both the Department of Human Services and the Child Protective Services Division),

Aubrey Fear, and Kathryn Greene will be referred to as the State Defendants.

The State Defendants answered the Complaint. ECF 51. The Hospital Defendants, Eye

Care Defendants, and County Defendants (collectively, the "Moving Defendants") move to

dismiss Plaintiffs' claims for failure to state a claim. ECF 40, 49, 52. The Eye Care Defendants

and County Defendants also move for a more definite statement, and the Eye Care Defendants

move to strike certain allegations in the Complaint. For the following reasons, the Court grants

the motions to dismiss in part and denies them in part, grants in part the motion for a more

definite statement, and denies the motion to strike.

## BACKGROUND

This lawsuit centers on alleged misconduct during the investigation and prosecution of

Plaintiff Nigel Bliss for child abuse and civil dependency proceedings initiated against Plaintiffs

Nigel and Dayna Bliss. Nigel and Dayna Bliss were married on August 2, 2014. Compl. ¶ 38.

Their first child, Plaintiff J.B., was born on October 3, 2015. *Id.* ¶ 39. Their second child,

Plaintiff E.B., was born on February 16, 2018. *Id.* ¶ 41. "Before the events giving rise to this

lawsuit, J.B. and E.B. were both happy, healthy, and thriving, hitting all major milestones for

normal growth and development, and receiving regularly scheduled wellness and other medical

care from their pediatrician." *Id.* ¶ 43.

"On May 24, 2018, E.B. began to experience vomiting after her feedings." *Id.* ¶ 44. Nigel and Dayna[1] took E.B. to see her pediatrician on May 27 and May 29. *Id.* ¶ 45. E.B. was seen at Randall Children's Hospital ("RCH") on May 29 for an abdominal ultrasound. *Id.* ¶ 46. E.B.'s pediatrician suggested gastroesophageal reflux disease as a possible cause of the vomiting. *Id.* The vomiting continued through June 5, 2018. *Id.* ¶ 47. On the evening of June 7, 2018, E.B.'s eyes deviated to the right and her body became rigid. *Id.* ¶ 48. Dayna, a nurse, recognized these as symptoms of a seizure. *Id.* ¶¶ 37, 48. Nigel called 911, and he and Dayna both spoke with the 911 operator. *Id.* ¶ 49. The seizure lasted approximately 10 minutes, with emergency personnel arriving and administering medication to stop it. *Id.* ¶ 50. E.B. suffered a second seizure while emergency services were tending to her. *Id.* ¶ 51. She was taken to the emergency room at RCH. *Id.* ¶ 53. "When she arrived at Randall Children's Hospital, E.B. was neurologically stable, moving all of her extremities appropriately, and had a supple non-tender neck." *Id.* ¶ 55.

Doctors examined E.B. and spoke with Nigel and Dayna, who reported E.B.'s history of vomiting and her sudden seizures. *Id.* ¶ 56. Throughout the examinations of E.B. in her first 48 hours at the hospital, no examinations reported "bumps, bruises, contusions, abrasions, soft tissue swelling, cuts, fractures or broken bones, neck injury, spinal injury or misalignment, ligament injuries, or signs of trauma, including brain injury." *Id.* ¶ 57. Several doctors reported E.B.'s unusually large head circumference. *Id.* ¶ 58. Numerous tests were ordered. *Id.* ¶ 59. A CT scan "revealed one small subdural hemorrhage over the right parietal lobe and a benign enlargement of extra-axial spaces over both frontal lobes." *Id.* ¶ 60. Nigel and Dayna were asked to, and did, report every possible incident of bumps to E.B.'s head; all were accidental. *Id.* ¶ 61.

---

[1] The Court refers to Nigel and Dayna Bliss by their first names for the sake of clarity and brevity.

Defendant Abtin, a doctor at RCH, and other doctors agreed that these accidents "could cause E.B.'s small right-sided acute subdural bleed in the setting of her large extra-axial fluid collections." *Id.* ¶ 62. Defendant Abtin told Nigel and Dayna that the bleeding "could even occur without corresponding trauma." *Id.* Defendant Abtin diagnosed E.B. with benign enlargement of the subarachnoid spaces ("BESS") and reported that the condition should spontaneously resolve. *Id.* ¶ 63.

However, "the finding of a subdural hemorrhage on the CT scan triggered a hospital policy that required a mandatory report of a concern for abuse and request for a consult by a 'child abuse pediatrician' from Defendant CARES Northwest." *Id.* ¶ 64. Defendant CARES is owned by Defendant Legacy Emanuel Hospital & Health Center ("Legacy"). *Id.* ¶ 65. It has a contract with the State of Oregon or Clackamas County District Attorney's Office to provide medical assessments to assist with the investigation and prosecution of suspected child abuse. *Id.* ¶ 66. CARES receives funding from the State and Clackamas County for its facilities, operating expenses, and personnel. *Id.* ¶ 67. Defendant Adewusi works for CARES as a child abuse pediatrician, and Defendant Rodriguez works for CARES as a clinical social worker associate. *Id.* ¶¶ 68-69. They are on a team with law enforcement officers, prosecutors, and State officials organized to investigate and prosecute child abuse. *Id.* ¶ 71. Defendants Adewusi, Rodriguez, CARES, and RCH "cooperate and act jointly with law enforcement and prosecutors to collect fines, fees, and expert witness expenses from those that they accuse of child abuse, while also collecting fees from the child's insurance company." *Id.* ¶ 73. Defendants Adewusi and Rodriguez also have fundraising obligations for CARES. *Id.* ¶ 74. CARES and Clackamas County must report the number of prosecutions to the State to justify continued funding. *Id.* ¶ 75.

The day after she was rushed to the hospital, E.B. underwent several procedures, including an MRI and a full bone survey, which showed no evidence of swelling, broken bones, or other indicia of abuse. *Id.* ¶¶ 79-81. But Defendant Abtin "wrongly reported the extra-axial fluid around E.B.'s brain as 'all blood,' labeled it a bilateral (both sides of the brain) chronic subdural hematoma, and told Nigel and Dayna that surgery was medically necessary to drain the extra-axial fluid." *Id.* ¶ 82. He did not inform them that monitoring E.B.'s condition was a reasonable alternative. *Id.* ¶ 83. Surgery confirmed that the fluid was primarily cerebrospinal fluid as initially suggested by CT scan results. *Id.* ¶ 84.

> While E.B. was still in surgery with Defendant Abtin, Defendants Adewusi, Rodriguez, Bray, Leikem, and Fear met together to conduct a "CARES NW Inpatient Consultation," initiate the criminal investigation of Nigel and Dayna Bliss, and to discuss, agree upon, and begin to implement a joint strategy for taking custody of E.B. and J.B., for convincing the juvenile court to exercise its jurisdiction, and for ultimately prosecuting Nigel Bliss for the alleged abuse of E.B.

*Id.* ¶ 85. They met in a conference room in the hospital. *Id.* ¶ 86. Defendants Bray and Leikem are officers for Defendant Clackamas County Sheriff's Office. *Id.* ¶ 22. Defendant Fear was employed by Defendant DHS. *Id.* ¶ 21. "Defendants Adewusi and Rodriguez suppressed evidence that they were, in fact, members of the law enforcement team that was surreptitiously investigating Nigel and Dayna." *Id.* ¶ 88. They presented themselves as part of E.B.'s treatment team and interrogated Nigel and Dayna. *Id.* ¶ 89. They did not inform Nigel or Dayna that they were conducting a forensic examination of E.B. and that the results would be shared with law enforcement. *Id.* ¶ 91.

The Complaint alleges that Defendants Adewusi and Rodriguez fabricated evidence in support of allegations of child abuse based on the interrogations, including false statements they attributed to Nigel and Dayna and false reporting that Nigel had been left alone with E.B. before she experienced her first seizure. *Id.* ¶¶ 93-95. Defendants Bray and Leikem told Nigel that he

did not need an attorney and would not be arrested, and that E.B. would only receive care if Nigel or Dayna confessed to abusing her. *Id.* ¶ 97. They told Nigel that there was medical evidence of abuse and suggested that Nigel's options were to implicate Dayna or confess to the abuse. *Id.* ¶ 98. Nigel maintained his innocence. *Id.* ¶ 99. Defendants Bray and Leikem falsely reported statements from their interrogation and took others out of context to present Nigel as suffering from PTSD and easily frustrated with E.B. *Id.* ¶ 100. They also "attempted to coerce Dayna into implicating Nigel by forcing her to sit for interrogation while she was distraught and had already been awake for over 36 hours, even though she asked to schedule the interrogation for another time." *Id.* ¶ 101. Dayna maintained her innocence. *Id.* ¶ 102.

Defendant Adewusi reported that E.B.'s clinical findings were consistent with abusive head trauma. *Id.* ¶ 104. She falsely reported that this was 100% certain and that all other causes had been medically eliminated. *Id.* ¶ 105. She also made reports inconsistent with the results of E.B.'s blood tests. *Id.* ¶ 108. Defendant Adewusi recruited Defendant Goodman, an ophthalmologist employed by Defendant Child Eye Care Associates, who agreed to work with Defendant Adewusi. *Id.* ¶¶ 20, 109. "Defendants Adewusi and CARES NW recruited Defendant Goodman because she was a well-known proponent of the debunked 'shaken baby syndrome' or 'abusive head trauma' hypothesis." *Id.* ¶ 110. Defendants Goodman and Adewusi created a report of retinal hemorrhages "that were 'most consistent with non-accidental trauma' upon examining E.B. after Defendant Abtin's surgery." *Id.* ¶ 111. Defendant Goodman did not take any photographs of the hemorrhaging. *Id.* ¶ 112. She also reported that the only possible non-abusive cause for the ophthalmologic findings would be "severe known accidental trauma." *Id.* ¶ 113. Defendants Adewusi and Goodman withheld evidence of questions surrounding "shaken baby syndrome." *Id.* ¶ 117.

The Complaint alleges that Defendants Adewusi, Rodriguez, Bray, Leikem, Fear, and Greene fabricated additional evidence in support of the finding of abuse. *Id.* ¶¶ 118-126, 128. "Defendants Bray and Leikem used the fabricated evidence to illegally conduct searches of the home and seize electronics belonging to Nigel and Dayna." *Id.* ¶ 130. "Defendants Adewusi, Rodriguez, Bray, Leikem, Fear, Greene, and Goodman submitted the fabricated evidence to the prosecution and the courts to obtain search warrants, pursue criminal charges, and secure custody of the children in dependency proceedings." *Id.* ¶ 131. These same Defendants also "suppressed and withheld from the prosecution and the courts the exculpatory evidence that proved that E.B. was suffering from a well-known and benign medical condition." *Id.* ¶ 132.

E.B.'s care changed as a result of the fabricated evidence of abuse. *Id.* ¶ 133. Hospital personnel did not inform Nigel and Dayna about E.B.'s condition. *Id.* ¶ 134. Defendant Adewusi "bullied" Defendant Abtin into adopting the diagnosis of abuse for charting purposes. *Id.* ¶ 135. At the same time, Defendant Abtin continued to tell Nigel and Dayna that E.B. was suffering from BESS. *Id.* Defendant Goodman did not conduct necessary follow-up testing and care, leading to a vitreous hemorrhage that caused complications with E.B.'s vision. *Id.* ¶¶ 136-137.

Defendant Fear seized E.B. in the hospital without a court order based on the fabricated evidence of abuse. *Id.* ¶ 139. Defendant Fear required DHS-approved supervision to be present for Nigel and Dayna to see their daughter. *Id.* ¶ 140. Defendant Fear fabricated evidence that J.B. was also in danger of abuse and implemented a safety plan that prohibited any unsupervised contact between J.B. and Nigel and Dayna. *Id.* ¶¶ 141-142.

A state court granted temporary custody of E.B. and J.B. to Defendant DHS. *Id.* ¶ 143. "Defendant Fear then fabricated evidence to prevent an in-home placement with Nigel and Dayna, forcing the children into foster care in order to create leverage against Nigel to

falsely confess and Dayna to implicate her husband." *Id.* ¶ 144. Before E.B. was released from

the hospital, Defendants Adewusi, Rodriguez, and Fear prevented Nigel and Dayna's access to

E.B. to determine whether E.B. would take a bottle. *Id.* ¶ 147. They placed E.B. in a foster home

one hour away from her parents. *Id.* ¶ 148. They limited Dayna's breastfeeding visits. *Id.* ¶ 149.

E.B. stopped gaining weight. *Id.* ¶ 150. E.B. continued to go to RCH for follow-up care, and she

was accompanied by a DHS caseworker and subjected to forensic examinations without parental

consent, exigent circumstances, or a court order. *Id.* ¶¶ 152-157.

      While in foster care, E.B. experienced more episodes of vomiting. *Id.* ¶ 158. Defendant

Abtin again diagnosed her with BESS and again performed an unnecessary surgery to evacuate

the fluids around her brain. *Id.* ¶¶ 159-160. Nigel and Dayna's access to E.B. was restricted

during this time. *Id.* ¶ 161. Defendants Adewusi and Fear fabricated evidence that the new

collection of fluid was caused by abuse. *Id.* ¶¶ 163-164. Defendant Fear withheld Defendant

Abtin's diagnosis of BESS from the court. *Id.* ¶ 167.

      During this time, the criminal investigation was ongoing. The State Defendants "told the

juvenile dependency court that both parents were under criminal investigation and law

enforcement could not eliminate Dayna as the alleged abuser." *Id.* ¶ 170. "Defendant Fear

fabricated evidence that Dayna was a danger to E.B. and J.B. because she was unwilling to agree

that Nigel had abused E.B." *Id.* ¶ 172. Defendants Greene and Fear fabricated evidence that E.B.

and J.B. were not safe at home and needed to be in foster care. *Id.* ¶¶ 174-178. The dependency

court awarded legal custody of E.B. and J.B. to Defendant DHS. *Id.* ¶ 179. "Defendant DHS then

instituted an 'in-home plan' to allow Dayna and Nigel to live with E.B. and J.B. under the

constant supervision of a DHS-approved SSP, while DHS maintained legal custody and

guardianship of the children." *Id.* ¶ 180. Nigel and Dayna followed the requirements of the plan.

*Id.* ¶ 183. Defendant Adewusi interfered with Nigel and Dayna's attempts to take E.B. to a different hospital, Oregon Health & Science University ("OHSU") for genetic testing. *Id.* ¶ 187.

Days after the visit to OHSU, Nigel Bliss was indicted for assault in the first degree, criminal mistreatment in the first degree, and assault in the third degree based on alleged abuse of E.B. *Id.* ¶ 188. Defendant Greene falsely reported that Nigel and Dayna had taken E.B. to her OHSU visit without notice or supervision in violation of the safety plan. *Id.* ¶ 189. The court then refused Nigel's request to remain in the home. *Id.* ¶ 190. Nigel was ordered to have no contact with the residence, was prohibited from attending his children's medical appointments, and was permitted only short, supervised visits with E.B. and J.B. *Id.* ¶ 191. The Bliss family lived in this manner from June 2018 through July 2021. *Id.* ¶ 194.

Shortly before Nigel's criminal trial was to begin, Defendant Abtin told the prosecutor that he could not diagnose or support a diagnosis of abusive head trauma because E.B.'s clinical findings were consistent with BESS. *Id.* ¶ 198. The prosecutor unilaterally moved to dismiss the charges against Nigel because a reasonable jury could not find him guilty beyond a reasonable doubt. *Id.* ¶ 199. The court dismissed the charges on July 30, 2021. *Id.* ¶ 200. On August 11, 2021, Defendant DHS agreed to dismiss the juvenile dependency case and return legal and physical custody of J.B. and E.B. to Nigel and Dayna. *Id.* ¶ 201. However, Defendant DHS continued to represent that the disposition of abuse was "founded." *Id.* ¶ 202. Nigel and Dayna appealed this designation, and on July 21, 2022, Defendant DHS admitted the allegations of abuse were unfounded. *Id.* ¶ 203.

Plaintiffs sued Defendants on May 3, 2023. The Complaint alleges a ten-count federal claim under 42 U.S.C. § 1983 as well as state-law claims for malicious prosecution, wrongful initiation of a civil proceeding, civil conspiracy, medical malpractice, negligent training and

supervision, intentional infliction of emotional distress ("IIED"), tortious interference with familial relationships, and spoliation of evidence. The State Defendants answered the Complaint, while all other Defendants move to dismiss for failure to state a claim.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his or her "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

**DISCUSSION**

The Moving Defendants argue that many of Plaintiffs' claims were filed outside the statute of limitations, that others are not cognizable, and that all claims are inadequately pleaded. The Court concludes that most of the claims are timely. But as discussed below, some are not cognizable and others are inadequately pleaded. The Court dismisses the defective claims with leave to amend except as to claims that are not cognizable. The Court declines to strike any allegations in the Complaint and grants the motion for a more definite statement in part.

## I.    Statute of Limitations

The Moving Defendants argue that many of Plaintiffs' claims are time-barred. The Hospital Defendants challenge the timeliness of Claims 1 (counts 1 and 3-7), 6, 7, and 9. Hospital Def. Mot. 10, ECF 40. The County Defendants challenge the timeliness of Claims 1 (counts 1 and 3-9), 4, 6, 7, and 9. County Def. Mot. 2-3, ECF 49. And the Eye Care Defendants challenge the timeliness of Claims 1 (counts 1 and 3-7) and 6-9. Eye Care Def. Mot. 5-6, ECF 52. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). The Court concludes that most of Plaintiffs' claims should not be dismissed as untimely at this stage of the case.

The parties agree that the statute of limitations for the challenged claims, whether they arise under state or federal law, is two years. Hospital Def. Mot. 10-14 (citing O.R.S. 12.110; *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002)); County Def. Mot. 8-10; Eye Care Def. Mot. 5-6; Pl. Resp. Hospital Def. 5, ECF 44. They disagree on when Plaintiffs' claims

accrued. Under federal law, a cause of action accrues "when the plaintiff knows or has reason to know of the actual injury" and the cause of the injury; the plaintiff need not know the legal injury. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). Under Oregon law, if the discovery rule applies, a tort claim accrues when the plaintiff knows or reasonably should know that "an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party." *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 519, 160 P.3d 1 (2007) (internal quotations omitted). The Hospital Defendants assert that "Plaintiffs have pleaded no facts suggesting that any tortious act occurred, or that any injury was first discovered, after May 3, 2021." Hospital Def. Mot. 14. The other Moving Defendants make similar arguments.

The Hospital Defendants ask the Court to take judicial notice of the dates in a medical record listing the dates that Plaintiff E.B. received treatment at Defendant RCH, which shows treatment dates in 2018 only. Req. for Judicial Notice, ECF 41; Hospital Def. Mot. Ex. B. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Hospital Defendants argue that the dates are a proper subject for judicial notice and that "Legacy's electronic medical record system is a 'source[] whose accuracy cannot reasonably be questioned[.]'" Req. for Judicial Notice 3 (quoting Fed. R. Evid. 201(b)). Plaintiffs oppose the request, arguing that medical records are generally not a proper subject for judicial notice and that E.B.'s medical records are a subject of dispute. Pl. Opp. Judicial Notice 3-4, ECF 47. In their Reply, the Hospital Defendants observe that Plaintiffs do not dispute the dates in the document. ECF 56. The Court declines to take judicial notice of the medical record because it is

not a source whose accuracy cannot reasonably be questioned. The Court notes that Plaintiffs do not contest the dates of treatment. Even if the Court were to take judicial notice of the medical record, it would not change the outcome because most of Plaintiffs' claims are timely for other reasons and because the Court may take judicial notice of a date contained in a different record.

The County Defendants ask the Court to take judicial notice of the date of indictment of Nigel Bliss. County Def. Mot. 9; Ciecko Decl. Ex. 101, ECF 50. "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The indictment of Nigel Bliss is a matter of public record. The Court takes judicial notice of the fact that it was entered in circuit court in Clackamas County on March 13, 2019. Ciecko Decl. Ex. 101. The Court now turns to the timeliness of Plaintiffs' claims for three sets of Plaintiffs: Nigel Bliss, Dayna Bliss, and the Children.

A.    Nigel Bliss

Plaintiffs argue that Nigel Bliss timely filed his claims because they did not accrue until the criminal proceedings against him terminated in his favor. Pl. Resp. Hospital Def. 5-10. The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been" invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A § 1983 claim cannot be brought if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

To determine when a claim accrues, federal courts should be guided by "the common-law principles governing analogous torts." *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019). In general, *Heck* does not delay the accrual of a tort claim where there is a pending prosecution but no conviction. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (holding that the statute of limitations on a false arrest claim begins to run at the time the plaintiff is detained pursuant to legal process and noting that the district court can stay the civil action if criminal charges are later filed). A claim for fabricated evidence is most akin to the common law tort of malicious prosecution, which "requires showing, in part, that a defendant instigated a criminal proceeding with improper purpose and without probable cause," as well as a termination of the criminal proceedings in favor of the plaintiff. *McDonough*, 139 S. Ct. at 2156. Therefore, the statute of limitations on a claim that the defendant fabricated evidence against the § 1983 plaintiff in a criminal proceeding does not begin to run until the criminal proceedings have terminated in favor of the § 1983 plaintiff. *Id.*

The Moving Defendants challenge the timeliness of counts 1 and 3-9 of Plaintiffs' § 1983 claim. Count 2, which alleges malicious prosecution, is not challenged. Count 1 alleges violations of Nigel Bliss's First and Fourteenth Amendment rights. Compl. ¶¶ 231-241. It alleges infringement on his "rights to familial association, privacy, and due process." *Id.* ¶ 232. It alleges that "Defendants deliberately withheld exculpatory and impeachment evidence from Nigel, his attorneys, and prosecutors[.]" *Id.* ¶ 233. It alleges that "Defendants fabricated and solicited false evidence[.]" *Id.* ¶ 234. It alleges that "Defendants Bray and Leikem intentionally or recklessly failed to investigate[.]" *Id.* ¶ 237. To the extent that count 1 alleges fabrication or withholding of evidence or similar misconduct regarding evidence during the investigation and prosecution of Nigel Bliss, the Court concludes that the claim is timely because it could not have been brought

until the criminal proceedings against him were terminated in his favor. *McDonough*, 139 S. Ct. at 2156; *see also Pressler v. Nevada Dep't of Pub. Safety*, No. 319CV00494RCJWGC, 2019 WL 7340507, at *7 (D. Nev. Dec. 12, 2019), *report and recommendation adopted*, No. 319CV00494RCJWGC, 2019 WL 7332744 (D. Nev. Dec. 27, 2019) (claim for failure to disclose exculpatory evidence accrues when conviction is invalidated).

To the extent that count 1 alleges interference with the right to familial association in violation of the First Amendment, the claim is timely. The most analogous tort is wrongful interference with the right to custody of a child. *See McBride v. Magnuson*, 282 Or. 433, 436, 578 P.2d 1259 (1978); *Franson v. Radich*, 84 Or. App. 715, 720, 735 P.2d 632 (1987). To prove that the interference with his custody rights was wrongful or unjustified, Nigel would have to prove that there was no reason to believe that he had abused E.B., which would challenge the decision to prosecute him for child abuse. Although the Supreme Court stated in *Wallace* that *Heck* generally will not delay accrual of claims where there is only an anticipated future conviction, 549 U.S. at 393, in *McDonough* it declined to apply that principle because the plaintiff's claim necessarily challenged the validity of the criminal proceedings, 139 S. Ct. at 2157-58. The Court concludes that Nigel Bliss's First Amendment claim for interference with his right to familial association would necessarily challenge the validity of the criminal proceedings. Thus, the claim is timely because it did not accrue until the charges against him were dismissed.

Finally, to the extent that count 1 alleges violation of Nigel's right to privacy based on the alleged unlawful search of the family home, the claim is not timely. It appears from the face of the Complaint that the search occurred before Nigel was criminally charged. *See* Compl. ¶¶ 130, 188. The indictment was filed in March 2019; thus, the search occurred between June 2018 and March 2019 and is not actionable unless *Heck* applies. The *Heck* Court held that "a suit for

damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Heck*, 512 U.S. at 487 n.7. *Heck* does not apply to the search here. The Complaint does not allege that the search revealed any evidence that was used in the criminal case against Nigel Bliss. A finding that the search was unlawful would not necessarily implicate the validity of the criminal proceedings or the dependency proceedings. Thus, any challenge to the search of the home is untimely. To the extent that Nigel Bliss intended to allege other violations of his right to privacy, he may amend this claim to clarify the challenged conduct.

Count 3 alleges failure to disclose exculpatory information in favor of Nigel Bliss. Compl. ¶¶ 248-254. This count repeats some of the allegations in count 1 with more detail, and the same reasoning applies as for count 1. Count 3 was timely filed. Count 4 alleges suppression and destruction of exculpatory evidence in favor of Nigel Bliss. *Id.* ¶¶ 255-259. This count is similar to count 3 and portions of count 1, and the same analysis applies. Count 4 was timely filed. Count 7 alleges failure to intervene in stopping the constitutional violations. *Id.* ¶¶ 282-289. Count 8 alleges conspiracy to commit the constitutional violations. *Id.* ¶¶ 290-300. Count 9 alleges *Monell* liability for the Entity Defendants. *Id.* ¶¶ 301-312. All three are predicated on the constitutional violations alleged in counts 1, 3, and 4. Thus, they are timely filed to the extent that counts 1, 3, and 4 are timely filed.

The Hospital Defendants agree that Plaintiffs' claims based on fabrication or suppression of evidence are timely filed to the extent they are connected to the malicious prosecution claims. Hospital Def. Reply 2-3. They argue that such claims are untimely to the extent that fabrication or suppression alone is the basis of the claim. *Id.* The Court does not read the Complaint to allege

that mere fabrication or suppression of evidence, without its use in a criminal or civil proceeding, constitutes a cause of action. Nor have Plaintiffs advanced such a theory in their briefing. The Hospital Defendants also argue that Plaintiffs' § 1983 claim based on conspiracy is only timely to the extent that the conspiracy was to maliciously prosecute the plaintiff. *Id.* at 3. The Complaint alleges a conspiracy to maliciously prosecute Nigel Bliss and initiate dependency proceedings against Nigel and Dayna Bliss. Compl. ¶ 213. Therefore, the claim is timely.

Plaintiffs assert that to the extent *Heck* does not apply, their § 1983 claims are timely because the Complaint alleges continuing violations. Pl. Resp. Hospital Def. 13-14. "The continuing violations doctrine functions as an exception to the discovery rule of accrual allowing a plaintiff to seek relief for events outside of the limitations period," and it applies to § 1983 claims. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (internal quotations omitted). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* (internal quotations omitted). The Supreme Court has sharply narrowed the applicability of the continuing violations doctrine such that "little remains." *Id.* at 748. Serial acts almost never suffice outside of hostile work environment claims. *Id.* And claims alleging the maintenance of a discriminatory system qualify only when they are class-wide pattern-or-practice claims. *Id.* In *Bird*, the Ninth Circuit held that the district court did not err in concluding that the continuing violations doctrine did not apply to the plaintiff's challenge to her placement and maintenance on a state child abuse registry. *Id.* In light of *Bird*, the Court concludes that the continuing violations doctrine does not apply here. Plaintiffs point to a case in which another court in this district found a continuing violation in a case involving alleged child abuse. Pl. Resp. Hospital Def. 13 n.74 (citing *Martinez v. Oregon ex rel. Dep't of Hum. Servs.*, No. 6:10-CV-06007-AA, 2012 WL

5188492, at *4-*5 (D. Or. Aug. 27, 2012)). *Martinez* predates *Bird*, and the Court is constrained by *Bird*. The Court now turns to Nigel Bliss's state-law claims.

The Moving Defendants challenge the timeliness of Plaintiffs' state-law claims for negligent training and supervision (Claim 6), IIED (Claim 7), tortious interference with familial relations (Claim 8), and spoliation of evidence (Claim 9). The analysis is similar for the state-law claims as for the federal claims. The Ninth Circuit recently reversed a district court's dismissal of the plaintiffs' IIED and abuse of process claims as time-barred, concluding that the claims "are akin to the tort of malicious prosecution because they rely on alleged fabrication of evidence and challenge the validity of the criminal proceedings against [the plaintiff]." *Manansingh v. United States*, No. 21-16192, 2023 WL 2658753, at *2 (9th Cir. Mar. 28, 2023) (internal quotations omitted). "Accordingly, Plaintiffs did not have a complete cause of action for the IIED and abuse of process claims until the criminal case against Manansingh was dismissed on June 21, 2018, whereupon his prosecution was terminated favorably." *Id.* at *3.

Claim 6 alleges negligent training and supervision of the Individual Defendants by the Entity Defendants. Compl. ¶¶ 352-359. The claim itself is vague, alleging a failure to train and supervise in a manner that would prohibit the misconduct that occurred in this case. *Id.* ¶ 354. Elsewhere in the Complaint, Plaintiffs allege that the Entity Defendants failed "to provide training and implement safeguards for cases in which SBS/AHT is alleged" and "train[ed] and actively encourag[ed] their respective agents and employees to ignore or reject non-abuse explanations for medical symptoms and conditions, or to treat alternative explanations for a child's medical symptoms or condition as conspiracy theories." *Id.* ¶¶ 223-224. They also allege a failure to adopt policies surrounding investigations and handling of evidence. *Id.* ¶ 225.

The Eye Care Defendants argue that the claim is not akin to claims for malicious prosecution or wrongful use of a civil proceeding because those torts require proof of malicious intent. Eye Care Def. Mot. 5-6. Plaintiffs counter that "[w]hen a defendant's negligent supervision leads to the fabrication or suppression of evidence that contributes to a wrongful criminal prosecution, the logic of *Heck/McDonough* applies in the same way it does to a malicious prosecution claim." Pl. Resp. Eye Care Def. 5, ECF 62. To the extent that the claim alleges failures of training and supervision surrounding the handling of evidence in a criminal investigation, the Court declines to hold at this time that Claim 6 is time-barred. However, to the extent that the claim alleges policies surrounding medical treatment of E.B., the claims are time-barred if asserted by Nigel Bliss because it is apparent from the Complaint that the challenged medical treatment of E.B. occurred before Nigel Bliss was indicted in March 2019. *Heck* did not bar those claims, so they are untimely.

Nigel Bliss's final three claims are easily resolved. Claim 7 is not time-barred. Nigel, like the plaintiffs in *Manansingh*, alleges IIED based on fabrication and withholding of evidence. Compl. ¶¶ 360-365. The IIED claim is akin to a malicious prosecution claim for the reasons stated in *Manansingh*. Claim 8 alleges tortious interference with familial relationships. *Id.* ¶¶ 366-373. As discussed below, this claim is cognizable only to the extent that it alleges tortious interference with the right to custody of one's children. And as with Nigel's First Amendment familial association claim, *Heck* delayed accrual of this claim because it necessarily challenges the validity of the prosecution. Finally, Claim 9, for spoliation of evidence, is not cognizable and is premature, as discussed below. In sum, most of Nigel Bliss's claims are timely filed. The Court turns to Dayna Bliss's claims.

B.    Dayna Bliss

Count 5 of Claim 1 alleges violation of Dayna Bliss's First and Fourteenth Amendment rights. Compl. ¶¶ 260-269. It alleges deprivation of Dayna's "rights to familial association, privacy, and due process." *Id.* ¶ 261. It alleges that "Defendants deliberately withheld exculpatory and impeachment evidence from Dayna, her attorneys, and the courts[.]" *Id.* ¶ 262. It also alleges that "Defendants fabricated and solicited false evidence" and used that evidence to pursue dependency proceedings. *Id.* ¶ 263.

In arguing that most of Dayna Bliss's claims are time-barred, the Hospital Defendants emphasize that Dayna was not criminally charged. Hospital Def. Reply 5-6. In general, where there is no conviction or confinement, *Heck* does not apply. *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 953 (9th Cir. 2022). Likewise, the *Heck*-derived rule of delayed accrual of claims does not apply to claims that are not analogous to the tort of malicious prosecution. *Id.* at 954 (accrual of plaintiff's racial discrimination claims did not depend on defendant's rescission of disciplinary warning).

Plaintiffs argue that the analysis for Dayna is the same as for Nigel, pointing to *Beets v. County of L.A.*, 669 F.3d 1038, 1045-46 (9th Cir. 2012). Pl. Resp. Hospital Def. 10-11. In *Beets*, the plaintiffs' son and a companion fled from police, and one officer shot the son and killed him. 669 F.3d at 1040. The parents sued the officer under § 1983, alleging excessive force. *Id.* The son's companion was convicted of aiding and abetting assault on a police officer. *Id.* The district court dismissed the plaintiffs' § 1983 claim, concluding that it was barred by *Heck* because the companion's conviction relied on a finding that the officer had not used excessive force against the plaintiffs' son. *Id.* at 1041. The Ninth Circuit affirmed, concluding that in order to prevail on

their claim, the plaintiffs would have to prove that the officer did use excessive force, which would undermine the companion's conviction. *Id.* at 1046.

The Hospital Defendants assert that *Beets* does not apply because Nigel Bliss was never convicted, and a pending prosecution does not delay a third-party's civil suit arising from the same facts. Hospital Def. Reply 7. They argue that "nothing about ***Dayna*** bringing a § 1983 [claim] would 'necessarily' refute or invalidate criminal charges against ***Nigel***, as is required for application of *Heck*. That is because it is theoretically possible that Dayna was being railroaded while legitimate criminal charges were being sought against Nigel." *Id.* Defendants' arguments have merit. The key in *Beets* was the conviction of the companion, who was convicted as an accomplice, which necessarily indicated that the plaintiffs' son was the principal. Nigel Bliss was never convicted. And as Hospital Defendants note, even if Dayna were to prevail on her claims, they would not necessarily undermine the proceedings against Nigel. *Beets* does not provide a basis to delay the accrual of Dayna Bliss's claims.

Some of Dayna's claims in count 5 of Claim 1 are time-barred. Dayna's claims for invasion of privacy based on the search of the family home are time-barred just as they are for Nigel. As it is not apparent to the Court that Dayna wishes to challenge any other conduct as a violation of her right to privacy, the Court grants leave to amend. Dayna's claims for violation of her First Amendment right to familial association are also untimely. It is apparent from the Complaint that the interference began more than two years before Plaintiffs filed suit, and Dayna knew of both the harm and who had caused the harm when the interference began because she alleges that she interacted with Defendants when E.B. was first taken to the hospital and that E.B. was seized in the hospital. *See* Compl. ¶¶ 89, 96, 139, 140. Nothing more is required for the statute of limitations to accrue under federal law. Plaintiffs' reliance on Oregon law on the

accrual of this claim, Pl. Resp. 13, is unavailing. Other district courts have recognized that accrual of such claims under federal law is different from accrual under Oregon law. *Blair v. Toran*, No. CV-99-956-ST, 1999 WL 1270802, at *11 (D. Or. Dec. 2, 1999), *aff'd*, 12 F. App'x 604 (9th Cir. 2001). And as explained above, the continuing violations doctrine does not apply and *Heck* did not delay accrual of the claim.

However, to the extent that Dayna Bliss's claims in count 5 challenge the institution of dependency proceedings against her, the claims are timely filed. She could not have brought those claims until the dependency proceedings terminated in her favor. The tort of wrongful initiation of civil proceedings, like the tort of malicious prosecution, requires termination of the proceedings in favor of the party bringing the tort claim. *Checkley v. Boyd*, 170 Or. App. 721, 734, 14 P.3d 81 (2000). The claims that Defendants violated her due process rights by withholding or fabricating evidence rely on the resolution of those proceedings. And counts 7, 8, and 9 are timely as asserted by Dayna Bliss to the extent that count 5 is timely. The Court turns to Dayna's state-law claims.

The analysis for Claim 6, for negligent training and supervision, is the same for Dayna as for Nigel. The claim is timely to the extent that it alleges negligence in the handling of the investigation of Dayna, as those claims rely on a favorable termination of the wrongful use of a civil proceeding claim. To the extent that the claim alleges negligence in the medical treatment of E.B., the claims are untimely if asserted by Dayna.

As far as the Court can discern, Claim 7, for IIED, is based on the same conduct giving rise to Dayna's claim for wrongful initiation of a civil proceeding. Plaintiffs' briefing indicates that the claim is based on initiation of the proceedings based on fabricated evidence and/or destruction of exculpatory evidence. Pl. Resp. Eye Care Def. 18-19. At this stage of the case, the

Court declines to hold that the claim is untimely. To the extent that Plaintiffs intend to base their IIED claim on other conduct, they may amend their claim to so state.

Claim 8, for interference with family relationships, was timely filed. Although Oregon courts have not yet decided the issue, the Court concludes they would hold that the tort is a continuing tort. "Oregon case law has held that a continuing-tort doctrine applies to the accrual of a claim when there is a series of incidents that individually do not support a claim, but as a whole are 'a systemic pattern of conduct that led to a specific injury.'" *Bellshaw v. Farmers Ins. Co. of Oregon*, 326 Or. App. 605, 622, 533 P.3d 40 (2023) (quoting *Barrington v. Sandberg*, 164 Or. App. 292, 297-98, 991 P.2d 1071 (1999)). "[A]t the heart of the continuing tort idea is the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Davis v. Bostick*, 282 Or. 667, 671-72, 580 P.2d 544 (1978). Oregon courts have held in the context of negligence suits that the statute of limitations on a single continuous negligent act does not begin to run until the conduct ceases. *Holdner v. Columbia Cnty.*, 51 Or. App. 605, 610-12, 627 P.2d 4 (1981) (discussing continuous torts including ongoing emissions from an aluminum plant, an ongoing course of medical treatment, and an ongoing failure to maintain ditches and culverts). Another court in this district concluded that the tort of interference with the right to custody of one's child is a continuing tort in Oregon, in line with courts in other states. *Blair*, 1999 WL 1270802, at *22. This Court agrees. Once the Children were seized (a discrete act), the interference with custodial rights was an ongoing, continuous harm. Dayna Bliss filed suit within two years of when the interference with her custodial rights ceased, so the claim is timely filed. Finally, Claim 9, as stated above, is not cognizable and is premature. The Court now turns to the Children's claims.

C.      The Children

Count 6 of Claim 1 alleges violation of Plaintiff E.B. and J.B.'s First, Fourth, and

Fourteenth Amendment Rights. Compl. ¶¶ 270-281. Plaintiffs argue that E.B. and J.B. timely

filed their claims because at all relevant times they were minors. Pl. Resp. Hospital Def. 15.

Under Oregon law, "if a person is entitled to bring an action mentioned in ORS 12.010 (Time of

commencing actions) . . . and at the time the cause of action accrues the person is a child who is

younger than 18 years of age, the statute of limitation for commencing the action is tolled for so

long as the person is younger than 18 years of age." O.R.S. 12.160(1). "The time for

commencing an action may not be extended under subsection (1) of this section for more than

five years, or for more than one year after the person attains 18 years of age, whichever occurs

first." O.R.S. 12.160(2). "State tolling statutes apply to § 1983 claims." *Elliott v. City of Union

City*, 25 F.3d 800, 802 (9th Cir. 1994).

The Complaint alleges that J.B. was born on October 3, 2015. Compl. ¶ 39. E.B. was

born on February 16, 2018. Compl. ¶ 41. Both were under age 18 when any cause of action

accrued, as both are still under age 18 today. The Complaint was filed on May 3, 2023. Plaintiff

E.B.'s medical complications, which precipitated the series of events culminating in this lawsuit,

are alleged to have begun on May 24, 2018. Compl. ¶ 44. She developed more serious symptoms

in June 2018 and was taken to the hospital. *Id.* ¶¶ 48-54. The earliest events supporting

Plaintiffs' claims occurred within five years of the date on which the Complaint was filed. Thus,

Plaintiffs J.B. and E.B. timely filed their claims as provided by O.R.S. 12.160. The Hospital

Defendants do not press their statute of limitations arguments with respect to J.B. and E.B. in

their Reply. Hospital Def. Reply 10 n.3. The County Defendants and Eye Care Defendants do

not argue against the applicability of O.R.S. 12.160. The Children's claims are timely. Having

concluded that most of Plaintiffs' claims are not time-barred, at least on the record as it presently stands, the Court turns to the cognizability of Plaintiffs' claims.

## II.      Cognizability of Claims

Defendants challenge the cognizability of several of Plaintiffs' claims. The Hospital Defendants challenge counts 8, 9, and 10 of Claim 1; and Claims 4, 8, and 10. Hospital Def. Mot. 24-27, 34. The County Defendants challenge counts 7, 8, and 9 of Claim 1; and Claims 4, 8, 9, and 10. County Def. Mot. 4-7. The Eye Care Defendants challenge counts 8 and 10 of Claim 1 and Claims 4, 8, and 9. Eye Care Def. Mot. 5, 8, 14-15, 18-19. The Court reviews each claim in turn.

### A.      Claim 1

Plaintiffs' first claim for relief arises under § 1983 and states ten counts. Compl. ¶¶ 231-314. The Court here addresses only those counts whose cognizability at least one Defendant challenges.

#### i.      Count 7

Count 7 alleges that Defendants Abtin, Bray, Fear, Greene, Goodman, and Leikem failed to intervene to prevent violation of Plaintiffs' constitutional rights. Compl. ¶¶ 282-289. The County Defendants argue that failure to intervene is not an independent cause of action but a means to hold a passive defendant liable for the actions of those who violate another's constitutional rights. County Def. Mot. 5 (citing *Tobias v. Artega*, 996 F.3d 571, 583-84 (9th Cir. 2021)). In *Tobias*, the Ninth Circuit stated, "If an officer fails to intercede, the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who performed the offending action." 996 F.3d at 584 (internal quotations omitted). Plaintiffs rely on several cases from other district courts that allowed failure to intervene claims to proceed

as independent claims. Pl. Resp. 7 n.28. And as Plaintiffs point out, they can plead both a direct constitutional violation and failure to intervene. *Id.* at 8. The Court concludes that Plaintiffs' failure to intervene claim is cognizable, but notes that it does rely on proof that Plaintiffs' rights were directly violated.

ii.      Count 8

Count 8 alleges a conspiracy by all Defendants except for Defendant DHS. Compl. ¶¶ 290-300. The Moving Defendants assert that conspiracy is not an independent cause of action under § 1983. Hospital Def. Mot. 27; County Def. Mot. 6; Eye Care Def. Mot. 5. Defendants are correct. "Conspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cnty.,* *693 F.3d 896, 935 (9th Cir. 2012).* "It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation. Conspiracy may, however, enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Id.* Plaintiffs point out that the overt acts of the conspiracy are actionable. Pl. Resp. Hospital Def. 35. The Court dismisses the conspiracy claim as a purported independent cause of action and notes that Plaintiffs pleaded a conspiracy in their factual allegations. Compl. ¶¶ 213-221. But Plaintiffs may still try to prove a conspiracy as a theory of liability, meaning that the allegations are properly included.

iii.      Count 9

Count 9 alleges unconstitutional policies, practices, and customs of the Entity Defendants except Defendant DHS. Compl. ¶¶ 301-312. The Hospital Defendants and Eye Care Defendants challenge the cognizability of this claim, arguing that it is not a standalone basis for relief. Hospital Def. Mot. 26; County Def. Mot. 6. To state a § 1983 claim against the Entity Defendants, Plaintiffs must plead that (1) the Entity Defendants acted under color of state law

and (2) a constitutional deprivation was caused by an official policy or custom of the entity. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)). The claim alleges the existence of policies and that the policies caused constitutional violations. As Hospital Defendants point out, the claim relies on the same alleged constitutional violations as some of the other counts in Plaintiffs' § 1983 claim. Hospital Def. Mot. 26. With the understanding that count 9 functions as a basis to allege that the Entity Defendants are liable for the constitutional deprivations alleged, the Court concludes that it is cognizable as a *Monell* claim.

   iv. Count 10

   Count 10 alleges that "Defendants CARES Northwest, Randall Children's Hospital, and Child Eye Care Associates are directly liable for their own conduct, as well as vicariously liable for the acts of their individual employees and agents . . . under a theory of respondeat superior or vicarious liability." Compl. ¶ 314. The Hospital Defendants correctly point out that the theory of respondeat superior does not apply to § 1983 claims. Hospital Def. Mot. 22-23. For both municipal and private entities, liability cannot be established on the sole basis that the entity employs the tortfeasor; the plaintiff must show that the alleged acts were due to "a policy, practice, or custom of the entity." *Monell*, 436 U.S. at 691 (so holding for municipalities); *Tsao, 698 F.3d at 1139* (applying *Monell* to private entities). Plaintiffs acknowledge *Tsao* but criticize its holding and "ask this Court to distinguish *Tsao* on the grounds that it did not take into account the text and legislative history of § 1983 and did not properly consider the distinction between municipalities and private entities." Pl. Resp. Hospital Def. 32-35. Plaintiffs' request is not well-taken, as it asks this Court not to distinguish *Tsao* but to reject its holding as erroneous. *Tsao* is binding precedent, and this Court must follow it. Count 10 of Plaintiffs' first claim for relief is

not cognizable and will be dismissed without leave to amend. The Court turns to Plaintiffs' state-law claims.

      B.     Claim 4

Plaintiffs' fourth claim for relief alleges civil conspiracy under Oregon law against all Defendants. Compl. ¶¶ 334-344. The Moving Defendants argue that civil conspiracy is not cognizable as a standalone claim under Oregon law. Hospital Def. Mot. 25; County Def. Mot. 4; Eye Care Def. Mot. 14-15. They are correct. Oregon courts have repeatedly held that conspiracy is not a theory of recovery but a theory of liability. *Granewich v. Harding*, 329 Or. 47, 53, 985 P.2d 788 (1999); *Morasch v. Hood*, 232 Or. App. 392, 402, 222 P.3d 1125, 1132 (2009); *Osborne v. Fadden*, 225 Or. App. 431, 437, 201 P.3d 278 (2009). *See also Holloway v. Clackamas River Water*, No. 13-01787, 2014 WL 6998069, at *6 (D. Or. Sept. 9, 2014) ("Because civil conspiracy is not a separate cause of action, Holloway's claims should be dismissed with prejudice."), *findings and recommendation adopted*, 2014 WL 6998084 (D. Or. Dec. 9, 2014). As Plaintiffs point out, the overt acts in a civil conspiracy are actionable. *Crosby v. SAIF Corp.*, 73 Or. App. 372, 377, 699 P.2d 198 (1985) (holding that district court erred in dismissing conspiracy claim). In sum, while a conspiracy itself is not actionable, to the extent that Plaintiffs have pleaded overt acts that are actionable, they may be able to establish liability by proving that some or all of the Defendants were in a conspiracy to prosecute Nigel and interfere with Nigel and Dayna's custody of their children. Plaintiffs pleaded a conspiracy in their factual allegations. Compl. ¶¶ 213-221. The Court dismisses Plaintiffs' civil conspiracy claim as a standalone claim, but holds that it is cognizable as a theory of liability.

//

//

C.    Claim 8

Plaintiffs' eighth claim for relief alleges tortious interference with familial relationships against all Defendants. Compl. ¶¶ 366-373. Plaintiffs allege that "Nigel and Dayna had a right to maintain a parental relationship with E.B. and J.B.," and "E.B. and J.B. had a right to maintain familial relationships with their parents, and to have their parents make all decisions regarding their care and welfare." *Id.* ¶¶ 367-368. Plaintiffs further allege that Defendants interfered with these rights "by conspiring to remove E.B. and J.B. from Nigel and Dayna, by conspiring to criminally prosecute Nigel for a crime that they knew he did not commit, and by otherwise preventing Nigel and Dayna from exercising their parental rights." *Id.* ¶ 369. Plaintiffs allege they suffered loss of familial association and emotional distress; they further allege that Plaintiff Nigel Bliss suffered loss of liberty and physical pain. *Id.* ¶¶ 371-373.

All Moving Defendants argue that Plaintiffs' claim is not cognizable under Oregon law. Hospital Def. Mot. 26, County Def. Mot. 4, Eye Care Def. Mot. 18. Arguing that the tort is cognizable, Plaintiffs rely on *McBride*, 282 Or. at 436, and *Franson*, 84 Or. App. at 720. Pl. Resp. Hospital Def. 41. Both cases recognized a claim for tortious interference with a parent's right to custody of their child. *McBride*, 282 Or. at 436 (denying defendant police officer's motion to dismiss plaintiff mother's claim that he intentionally interfered with her custody of her son); *Franson*, 84 Or. App. at 720 (holding that trial court erred in dismissing claim for interference with custody where plaintiff parents alleged that defendants initiated custody proceedings based on the erroneous belief that plaintiffs' child was suffering from neglect). Thus, to the extent Plaintiffs' eighth claim is based on harm to Nigel and Dayna due to alleged interference with Nigel and Dayna's right to custody of their children, the claim is cognizable. But Plaintiffs point to no authority recognizing a broader tort of interference with familial

relationships in Oregon, and this Court located no such authority. The Court therefore dismisses the claim to the extent it attempts to exceed a claim for tortious interference with the right to custody of a child.

      D.     Claim 9

Plaintiffs' ninth claim for relief alleges negligent or intentional spoliation of evidence under Oregon law by all Defendants, asserting that this spoliation diminished the value of the claims in this case. Compl. ¶¶ 374-379. The County Defendants and Eye Care Defendants assert that Oregon does not recognize spoliation claims, and further that such claims would be premature. County Def. Mot. 5; Eye Care Def. Mot. 19. Oregon courts have not yet recognized the tort of spoliation of evidence. *Kerr v. Bd. of Psych. Examiners*, 304 Or. App. 95, 111-12, 467 P.3d 754 (2020) (calling such a claim "arguable or potential"). *See also Nicita v. Holladay*, No. 3:19-CV-01960-YY, 2021 WL 8363204, at *19 (D. Or. Oct. 27, 2021) (noting that it was unclear whether a spoliation tort was cognizable under Oregon law), *findings and recommendation adopted in part, rejected in part*, No. 3:19-CV-01960-YY, 2022 WL 1026729 (D. Or. Apr. 4, 2022). The Oregon Court of Appeals has indicated that to the extent that such a claim could be stated, it must be brought after the plaintiff has "first brought the underlying claim and lost or suffered diminution in its value." *Classen v. Arete NW, LLC*, 254 Or. App. 216, 222, 294 P.3d 520 (2012). *See also Melo v. Oregon*, No. 6:15-CV-02177-MC, 2016 WL 297430, at *2 (D. Or. Jan. 20, 2016) (holding that plaintiff's spoliation claim, to the extent it was cognizable, was premature because plaintiff had not yet suffered a diminution in value of her claims).

Even if the spoliation claim is cognizable under Oregon law, Plaintiffs' claim is premature. Plaintiffs allege that the spoliation of evidence diminished the value of their claims in this lawsuit. Compl. ¶ 378. In arguing that their claim is cognizable and timely, Plaintiffs rely on

law review articles and nonbinding cases from other jurisdictions. Pl. Resp. County Def. 4-5, ECF 58. Plaintiffs also suggest that a bifurcated trial could resolve any concerns about timeliness. *Id.* at 5 (citing *Verd v. I-Flow, LLC*, 3:11-cv-00677-AA, 2013 WL 2178081, at *5 (D. Or. May 2013)). In *Verd*, the district court recognized a split of opinion on whether a spoliation claim was cognizable, but concluded that the claim was premature and dismissed it with leave to replead. 2013 WL 2178081, at *5. The Court concludes that Plaintiffs' spoliation claim must be dismissed. Oregon courts have not yet recognized the tort, and even if they had, Plaintiffs' claim is premature.

E.    Claim 10

Plaintiffs' tenth claim for relief seeks attorney fees pursuant to 42 U.S.C. § 1988(b). Compl. ¶ 381. Under that statute, in an action to enforce a provision of § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). As the Hospital Defendants point out, "[a]ttorneys' fees are a type of relief, not a cause of action." Hospital Def. Mot. 34. While Plaintiffs can and did properly seek attorney fees as a form of relief in their prayer for relief, *see* Compl. 55, they may not state a standalone claim for attorney fees. The Court dismisses Plaintiffs' tenth claim for relief because it is not cognizable as a cause of action.

F.    Summary

In sum, counts 7, 8, and 9 of Claim 1 are cognizable as theories of liability. Count 10 of Claim 1 is barred as a matter of law. Claim 4 is cognizable as a theory of liability. Claim 8 is cognizable in part. Claim 9 is not cognizable under Oregon law and is also premature. And Claim 10 is not cognizable as a cause of action. Amendment will not save the claims that are not

cognizable, so the Court will not grant leave to amend those claims. The Court now turns to the sufficiency of the pleadings for the cognizable causes of action and theories of liability.

**III.    Sufficiency of Pleading**

    A.    Section 1983 Claim

    To state a claim under § 1983, Plaintiffs must allege that Defendants (1) deprived them of a constitutional right and (2) acted under color of state law. *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1121 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023). The Moving Defendants challenge both elements.

        i.    State Action

    The Hospital Defendants and Eye Care Defendants argue that they did not act under color of state law. Hospital Def. Mot. 19-22; Eye Care Def. Mot. 8-10. To be considered a state actor, "[t]he private actor must meet (1) the state policy requirement, and (2) the state actor requirement." *Wright*, 48 F.4th at 1121. The state policy requirement asks "whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible." *Id.* at 1121-22 (internal quotations omitted). The state actor requirement employs one of four tests to determine "whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.* at 1122 (internal quotations omitted). "Those tests include the public function test, the joint action test, the state compulsion test, and the governmental nexus test." *Id.* Plaintiffs assert that they have satisfied the public function, joint action, and governmental nexus tests. Pl. Resp. Hospital Def. 19-23.

//

//

a.    Hospital Defendants

The Court concludes that the Complaint adequately alleges that the Hospital Defendants acted pursuant to a state policy; however, except for Defendant Adewusi, it does not adequately allege that they were state actors. For the state policy requirement, Plaintiffs argue that they "allege the Hospital Defendants were not providing medical care and treatment, but instead were exercising their right or privilege under state statute to collaborate with the government in the endeavor of investigating child abuse, a potential crime." Pl. Resp. Hospital Def. 24 (citing Compl. ¶¶ 65-78). Plaintiffs point to an Oregon statue providing state funds to child abuse multidisciplinary teams or entities designated by the teams. *Id.* (citing O.R.S. 418.746(2)). The statute tasks the district attorney of each county with developing such teams. O.R.S. 418.747(1). In short, Plaintiffs allege that the private Defendants acted pursuant to the state-created right to investigate child abuse as part of a law enforcement team. Pl. Resp. Hospital Def. 25. The Hospital Defendants counter that no such state-created right exists because "any private party may investigate child abuse[.]" Hospital Def. Reply 18. They contend that acting pursuant to a contract with the state does not on its own show action pursuant to state policy. *Id.* at 19-20. The Court concludes that Plaintiffs have adequately alleged that the Hospital Defendants acted pursuant to a state-created right to investigate child abuse as part of a County-developed law enforcement team. The Court now turns to the second part of the state action test.

Plaintiffs have not adequately alleged that any of the Hospital Defendants are state actors under the public function test. "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (internal quotations omitted) (holding that serving as a guardian *ad litem* was not a public function). According to Plaintiffs, "There can be no debate that the

investigation of child abuse is both traditionally and exclusively a governmental function." Pl. Resp. 20. Plaintiffs rely on *State ex rel. Juv. Dep't of Multnomah Cnty. v. S.P.*, 346 Or. 592, 215 P.3d 847 (2009). In *S.P.*, the Oregon Supreme Court concluded that CARES Northwest appeared to serve primarily as a proxy for the police, and thus statements made to representatives of CARES were testimonial under the Confrontation Clause. *Id.* at 620, 626-27. Hospital Defendants correctly point out that *S.P.* is of limited utility here, as the inquiry under the Confrontation Clause is different from the state action inquiry for § 1983 claims. Hospital Def. Reply 13-14. Hospital Defendants point to cases holding that investigating crimes is not traditionally and exclusively a public function. *Id.* at 12 (citing *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020); *Arias v. City of Everett*, No. 19-10537, 2019 WL 6528894, at *9 (D. Mass. Dec. 4, 2019); *Carney v. Town of Weare*, No. 15-00291, 2017 WL 680384, at *12 (D.N.H. Feb. 21, 2017)). In *Miller*, the Sixth Circuit noted that investigation of a crime, while long a government responsibility, "has also long been performed by private parties protecting their property. Think of shopkeepers investigating theft by shoplifters or insurance companies investigating arson by claimants." 982 F.3d at 423. Thus, Google was not a state actor when it investigated the crime of child pornography. *Id.* The Court agrees with *Miller*'s conclusion that investigating a crime is not a public function for the purposes of § 1983. Plaintiffs have not alleged that the Hospital Defendants meet the public function test.

Next, Plaintiffs assert that the Hospital Defendants meet the joint action test because the Complaint alleges that they were in a conspiracy with the State and County Defendants. Pl. Resp. Hospital Def. 20-22. Defendants counter that Plaintiffs' pleadings are conclusory and lack enough facts to support the inference of a conspiracy. Hospital Def. Reply 15-17. The joint action test is met when "the state has so far insinuated itself into a position of interdependence

with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093 (internal quotations omitted). "A merely contractual relationship between the government and the non-governmental party does not support joint action; there must be a symbiotic relationship of mutual benefit and substantial degree of cooperative action." *Belgau v. Inslee*, 975 F.3d 940, 948 (9th Cir. 2020) (internal quotations omitted). In *Tsao*, for instance, the joint action test was met where the local police department trained private security officers, provided them with information from its records, and delegated to them the authority to issue criminal citations. 698 F.3d at 1140. Proving the existence of a conspiracy will also satisfy the joint action test. *Id.*

Plaintiffs allege that the Hospital Defendants conspired with the other Defendants. Compl. ¶¶ 213-221; 290-300 (count 8 of Claim 1). "To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotations omitted). "[T]he plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).

Plaintiffs have not adequately pleaded a conspiracy. They assert:

The Defendants were part of the Clackamas County MDT, a team created for the sole purpose of pursuing child abuse prosecutions. As part of that team, the Defendants knew that state funding for the team is dependent upon the number of successful prosecutions, which created an incentive to fabricate a perceived need for more services by "finding" and alleging more instances of child abuse. The Defendants also knew, and feared, that retracting a diagnosis of child abuse, or acknowledging a mistake, would undermine the Clackamas County MDT's role and reputation, which created an incentive to insist that the diagnosis is correct despite medical evidence to the contrary.

Compl. ¶ 214. These allegations do not help the case for a conspiracy cross the line from

possible to plausible. Receiving state funding for child abuse investigations is not evidence of an

intent to conspire to falsify evidence of abuse.

> Plaintiffs also allege:

> Defendants Adewusi, Rodriguez, Bray, Leikem, and Fear met for hours in a
> hospital conference room as they took turns interrogating Nigel and Dayna, and
> then fabricated evidence from those interrogations. Defendants Adewusi and Fear
> also met with Defendants Goodman and Greene, shared information, and obtained
> their help with fabricating evidence to achieve the same shared goals.

*Id.* ¶ 218. Plaintiffs allege that Defendants Abtin, Adewusi, and Goodman suppressed evidence

of a benign condition that would explain E.B.'s symptoms, with Defendant Abtin modifying his

report after Defendants Adewusi and Goodman fabricated a diagnosis of abuse. *Id.* ¶ 219(a)-(b),

(d). They allege that "after hearing from Defendants Adewusi and Goodman, Defendant Fear

fabricated evidence to suggest that Dayna was a danger to her son because she would not admit

to criminal conduct by Nigel." *Id.* ¶ 219(c). They allege that Defendant Rodriguez suppressed

exculpatory statements that Nigel and Dayna made during interrogations. *Id.* ¶ 219(e). And they

allege that "Defendants Bray and Leikem discovered exculpatory evidence through witness

interviews and fabricated reports to cover it up." *Id.* ¶ 219(f).

Plaintiffs' allegations are insufficient to show a conspiracy between all Defendants. At

most, they show that some of the individual Defendants met to discuss the possibility of child

abuse and then questioned Nigel and Dayna Bliss. They do not show a meeting of the minds to

fabricate evidence of child abuse or prosecute Nigel Bliss. The Complaint alleges that Defendant

Goodman created a report that E.B.'s retinal hemorrhages were "most consistent with non-

accidental trauma" and that "severe known accidental trauma" was the only possible non-abusive

cause. *Id.* ¶¶ 111, 113. It alleges that Defendant Adewusi contributed to this report. *Id.* ¶ 111. It

alleges that Defendant Adewusi "bullied" Defendant Abtin to adopt the abuse explanation. *Id.* ¶ 135. It alleges that Defendant Fear relied on this reporting. *Id.* ¶ 219(c). When conclusory and argumentative terminology is disregarded, the Complaint alleges facts indicating that Defendant Adewusi was concerned about the possibility of child abuse, that Defendant Goodman examined E.B. and concluded that her injuries were most likely caused by abuse, and that Defendants Abtin and Fear acted in reliance on that report. Rather than an agreement, the Complaint alleges various decisions made by individual Defendants in reliance on the medical decisionmaking of other Defendants. Similarly, the Complaint appears to allege that Defendant Rodriguez unilaterally withheld exculpatory statements made by Nigel and Dayna Bliss from other Defendants. Compl. ¶ 219(e). And it alleges that Defendants Bray and Leikem, both County employees, covered up exculpatory evidence. *Id.* ¶ 219(f). No specific facts alleged suggest that these actions were undertaken as part of a conspiracy with the State, Hospital, or Eye Care Defendants. The allegations of joint action are conclusory.

In sum, while it is conceivable based on the allegations in the Complaint that Defendants were in a conspiracy against Nigel and Dayna Bliss, it is not plausible. Plaintiffs' reliance on cases predating *Twombly* and *Iqbal* is insufficient under current federal pleading standards. *See* Pl. Resp. Hospital Def. 20-22. More recent cases require more specific facts. *E.g.*, *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (holding that plaintiff had adequately alleged that police detectives conspired to make a witness unavailable at her trial where the witness was cooperating, a detective spoke with the witness to dissuade her from testifying, and soon after the witness stopped cooperating and criminal charges were unexpectedly filed against the witness in a tangentially related matter, and the deputy district attorney threatened to have the witness's attorney recused if she did not plead the Fifth on the witness stand). Plaintiffs have not

adequately alleged a conspiracy, so they have not adequately alleged that the Hospital

Defendants meet the joint action test.

Finally, Plaintiffs argue that the Hospital Defendants are state actors under the nexus test.

The nexus test has two formulations. *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023).

The first formulation is met when "there is pervasive entwinement of public institutions and

public officials in [the private actor's] composition and workings." *Id.* (internal quotations

omitted). This formulation considers "factors such as whether the private organization relies on

public funding, whether it is composed mainly of public officials, and whether those public

officials dominate decision making of the organization." *Id.* (internal quotations omitted). The

Hospital Entity Defendants do not fit this formulation. While Defendant CARES is alleged to

receive public funding, there are no allegations that either Defendant CARES or Defendant RCH

is comprised mainly of public officials or that public officials dominate their decision making.

The second formulation of the nexus test is met when "government officials have

"exercised coercive power or [have] provided such significant encouragement, either overt or

covert, that the choice must in law be deemed to be that of the State." *Id.* (internal quotations

omitted). In the context of physicians, the Ninth Circuit has found this test to be met where

private physicians treated the involuntarily committed plaintiff at a private facility and petitioned

for additional days of treatment. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 746, 755

(9th Cir. 2020). The Ninth Circuit noted that under applicable state law, no medical provider

could detain or forcibly treat a mental health patient for over 72 hours without a court order,

which in that case was granted at the physicians' request. *Id.* at 755.

Plaintiffs here do not allege a similarly close relationship between most of the Hospital

Defendants and the State or County Defendants. They allege that Hospital Defendants acted

pursuant to a contract with the State. Compl. ¶¶ 65-70. But the report of abuse was made pursuant to a hospital policy and was made to a child abuse pediatrician from Defendant CARES, not to the government. *Id.* ¶ 64. The Complaint does not allege that the report was instigated by the County or the State.

The Complaint does, however, adequately allege that Defendant Adewusi was a state actor for some of her conduct. Plaintiffs point to *N.L. by & through Arce v. Childrens Hospital Los Angeles*, 711 F. App'x 433, 434 (9th Cir. 2018), in which the Ninth Circuit found that the plaintiffs plausibly alleged that the defendant hospital acted under color of law in performing a forensic medical examination of a child to help county officials investigate possible child abuse. The operative complaint in *N.L.* alleged that when the medical examination was performed, the State of California had already seized the child and placed him in foster care, and the State contacted the CARES team to schedule the medical examination. Second Am. Compl. ¶¶ 16, 23, 29, *N.L. v. Childrens Hosp. Los Angeles et al.*, No. 2:15-cv-07200-AB-SK (C.D. Cal., Apr. 11, 2016). Thus, *N.L.* is similar to *Rawson* because it involved a custodial medical examination performed by a private medical facility at the request of the State. Here, the Complaint does not allege that the County or State had taken custody of E.B. when the initial medical examination was performed or that it was performed at the request of the County or the State. But it does allege that after Defendant DHS had taken custody of E.B., Defendant Adewusi "conducted a full body physical examination of E.B., including her anogenital region, and took photographs of E.B. to share with law enforcement" and "ordered a second full body x-ray" of E.B. Compl. ¶¶ 154-156. The Complaint adequately alleges that Defendant Adewusi was a state actor when she performed those acts.

Finally, as Hospital Defendants note, evidence of state action is particularly lacking with respect to Defendant Abtin. Hospital Def. Reply 18. The Complaint alleges that other Defendants met to initiate the investigation of Nigel and Dayna while Defendant Abtin was performing a surgical procedure on E.B. Compl. ¶ 85. And it alleges that "Defendant Adewusi bullied E.B.'s treatment team, and, as a result, Defendant Abtin adopted Defendants Adewusi's and Goodman's diagnosis of abuse for charting purposes." *Id.* ¶ 135. It is unclear from these allegations whether Defendant Abtin reached an agreement with the other Defendants. Plaintiffs should clarify the allegations as to Defendant Abtin. In sum, except for Defendant Adewusi, Plaintiffs have not adequately alleged that the Hospital Defendants were state actors. The Court turns to the Eye Care Defendants.

  b. Eye Care Defendants

Plaintiffs generally rely on the same arguments for the Eye Care Defendants as for the Hospital Defendants. Pl. Resp. Eye Care Def. 8. The Eye Care Defendants are more removed from state action. Plaintiffs allege that the Eye Care Defendants were agents of the Hospital Defendants. Compl. ¶ 109. This agency relationship is too remote a basis to find state action. *See Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000) ("When purely private actors obtain the help of a private physician to bring about the involuntary admission and detention of an allegedly mentally ill person for psychiatric examination, courts that have addressed this scenario in the § 1983 context have held that there is no state action."). The allegations about the Eye Care Defendants otherwise suffer from the same deficiencies as the allegations about the Hospital Defendants. There are no allegations that Defendant Goodman participated in the subsequent custodial forensic examinations of E.B. The Court concludes that the Eye Care Defendants meet neither the state policy prong nor the state actor prong.

Plaintiffs point to allegations that Defendants, including Defendant Goodman, submitted evidence to the prosecution and the courts to "obtain search warrants, pursue criminal charges, and secure custody of the children in dependency proceedings." Compl. ¶ 131. The Complaint does not provide factual allegations plausibly suggesting that Defendant Goodman, a private ophthalmologist, took on the responsibilities of a state law enforcement officer rather than providing evidence to County or State officers at their request or by responding to a subpoena. *See* Eye Care Def. Reply 6, ECF 66. This case is unlike *Tsao*, where private security officers were alleged to have been delegated the authority to issue criminal citations. 698 F.3d at 1140. Plaintiffs allege that Defendant Goodman was an agent of the Hospital Defendants. Compl. ¶ 109. They do not allege that she was delegated the authority of a police officer. Plaintiffs have not adequately pleaded that the Eye Care Defendants were state actors. Accordingly, the Court dismisses Plaintiffs' § 1983 claims as to the Eye Care Defendants and the Hospital Defendants other than Defendant Adewusi, with leave to amend. The Court now addresses whether Plaintiffs have adequately pleaded a deprivation of their constitutional rights.

   ii.  Deprivation of Constitutional Rights

The Court reviews the adequacy of the pleadings for counts 1 through 9 of Claim 1.

   a.  Count 1

Count 1 alleges that all Defendants other than DHS "deprived Nigel of his constitutional rights under the First and Fourteenth Amendments, including his rights to familial association, privacy, and due process." Compl. ¶ 232. Hospital Defendants assert that Plaintiffs fail to plead any First Amendment violation. Hospital Def. Mot. 33. Plaintiffs explain that the First Amendment claim is for a violation of their right to cohabit with relatives. Pl. Resp. 47 (citing *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987)). In alleging that

J.B. and E.B. were placed in foster care against his will and that he was not permitted to reside

with his children or his spouse, Nigel Bliss adequately alleges a violation of this right. And he

adequately alleges that the fabrication of evidence and withholding of exculpatory evidence

violated his due process rights. However, as discussed above, any claim for violation of the right

to privacy based on the search of Plaintiffs' home is untimely as to Nigel Bliss. It is not apparent

on what other basis the claim alleges a violation of the right to privacy. And count 1 does not

reference the Fourth Amendment, making the basis of the privacy claim unclear. Plaintiffs

should clarify count 1 when amending the Complaint.

b.     Count 2

Count 2 alleges that all Defendants other than DHS maliciously prosecuted Nigel Bliss.

Compl. ¶¶ 242-247. In the Ninth Circuit, a claim for malicious prosecution under § 1983 is

available if the malicious prosecution is conducted for the purpose of denying the § 1983

plaintiff a specific constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th

Cir. 2004). The claim otherwise incorporates the elements of applicable state law. *Id.* Under

Oregon law, the elements of a malicious prosecution claim are:

> (1) the institution or continuation of the original criminal proceedings; (2) by or at
> the insistence of the defendant; (3) termination of such proceedings in the plaintiff's
> favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the
> proceeding; and (6) injury or damage because of the prosecution.

*Blandino v. Fischel*, 179 Or. App. 185, 190-91, 39 P.3d 258 (2002).

Hospital Defendants argue that Plaintiffs fail to allege that Hospital Defendants initiated

the prosecution or that the charges against Nigel Bliss lacked probable cause. Hospital Def. Mot.

28-30. County Defendants join in these arguments, and Eye Care Defendants make similar

arguments. County Def. Mot. 8; Eye Care Def. Mot. 14. Plaintiff counters that a defendant need

not personally file the charges to have initiated them and that knowingly providing false evidence suffices and shows a lack of probable cause. Pl. Resp. Hospital Def. 43-44.

The decision to file criminal charges is ordinarily presumed to result from the independent decision of the prosecutor, but this presumption can be overcome by showing that state or local officials "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067. The Oregon Supreme Court has held that individuals other than prosecutors may be liable for malicious prosecution for taking actions that result in charges being filed or for taking "[a]n active part in continuing an unfounded criminal proceeding." *Rogers v. Hill*, 281 Or. 491, 499-500, 576 P.2d 328 (1978). The Complaint alleges that Defendant Abtin diagnosed E.B. with BESS, a condition not caused by abuse, and that there was no evidence of abuse, but Defendants fabricated evidence supporting a finding of abuse and concealed exculpatory evidence. It alleges that this led to Nigel Bliss being criminally charged. Compl. ¶ 317. While the Moving Defendants are correct that the Complaint only rarely mentions prosecutors, the Complaint adequately alleges that Defendants provided false inculpatory evidence to and withheld exculpatory evidence from the prosecutors, improperly influencing them and leading them to charge Nigel Bliss with child abuse.[2]

However, the Complaint does not adequately allege that charges were instituted by or at the insistence of Defendant Abtin. Plaintiffs allege that Defendant Abtin was performing surgery on E.B. when other Defendants met to initiate the criminal investigation. Compl. ¶ 85. The

---

[2] While Hospital Defendants assert that the term "fabricated" is conclusory, Hospital Def. Mot. 5 n.2, Plaintiffs do specify what evidence they allege was fabricated, Compl. ¶¶ 94, 104-105, 107-108, 111, 113, so their allegations are sufficient.

Complaint alleges that Defendant Abtin was "bullied" by Defendant Adewusi and that Defendant Abtin ultimately told the prosecutor about the diagnosis of BESS, leading to a dismissal of all charges. Compl. ¶¶ 135, 198. The Complaint has not adequately alleged that Defendant Abtin insisted on the institution of charges against Nigel Bliss.

The allegations that the only evidence of abuse was fabricated also serve to allege that charges were instituted without probable cause. While Hospital Defendants suggest that it would be reasonable for them to suspect abuse when E.B. arrived at the hospital with a head injury, the Complaint alleges that Defendant Abtin then diagnosed her with BESS, a condition not caused by abuse, and that no other circumstances indicated abuse. Plaintiffs allege that the investigation began pursuant to a hospital policy mandating a report of possible abuse. Compl. ¶ 64. The Complaint adequately alleges that all of E.B.'s health issues were explained by a diagnosis that raised no concerns of abuse and that the evidence of abuse was fabricated. Thus, it adequately alleges that the charges were not based on probable cause.

The alleged lack of probable cause also serves to allege that the prosecution was initiated with malice. In the context of a malicious prosecution claim, malice means "the existence of a primary purpose other than that of securing an adjudication of the claim." *Perry v. Rein*, 215 Or. App. 113, 125, 168 P.3d 1163 (2007) (internal quotations omitted). Under some circumstances, the jury may infer an improper purpose from lack of probable cause. *Gustafson v. Payless Drug Stores Nw., Inc.*, 269 Or. 354, 367, 525 P.2d 118 (1974). In alleging that Defendants deliberately created false evidence against Nigel Bliss and deliberately withheld exculpatory evidence, the Complaint adequately alleges the malice element.

Finally, Nigel Bliss adequately alleges that Defendants acted to deprive him of a specific constitutional right. The Complaint adequately alleges that the prosecution was instituted for the

purpose of separating him from his children in violation of his First Amendment right to reside with his family. Defendants do not dispute that the prosecution terminated in Nigel Bliss's favor or that he was injured by the proceedings. The Court dismisses this count as to Defendant Abtin only, with leave to amend.

c.    Count 3

Count 3 alleges that all Defendants except DHS failed to disclose exculpatory evidence. Compl. ¶¶ 248-254. Disclosure of material exculpatory evidence is required under *Brady v. Maryland*, 373 U.S. 83 (1963). "To state a claim under *Brady,* the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011). The Moving Defendants challenge the adequacy of the pleadings but offer no specific arguments. The Complaint alleges that Defendants failed to disclose evidence that BESS, rather than abusive head trauma, was the cause of E.B.'s head condition, and that the ultimate disclosure of that evidence to the prosecutor led to the dismissal of all charges against Nigel Bliss shortly before trial. *See* Compl. ¶ 198. These allegations establish the first two elements for the Defendants who are government actors. As to the third element, other district courts in the Ninth Circuit have held that a criminal defendant who was not convicted cannot show prejudice. *E.g.*, *Godwin v. Loera*, No. 3:20-CV-2001-LAB-BLM, 2021 WL 2333253, at *2 (S.D. Cal. June 7, 2021). The Court will not address that issue because the parties have not briefed it. Count 3 will not be dismissed at this time.

//

//

d.    Count 4

Count 4 alleges that all Defendants except DHS "suppressed, destroyed, or caused to be destroyed exculpatory and materially-favorable evidence" and enumerates that evidence. Compl. ¶¶ 255-259. Count 4 is analytically similar to count 3, and Defendants offer no specific arguments against the sufficiency of the factual allegations themselves. The Court concludes that count 4 states a claim to the extent that count 3 does.

e.    Count 5

Count 5 is similar to count 1, except that it asserts violations of Dayna Bliss's rights. For the reasons discussed in addressing count 1, count 5 states a claim for violation of Dayna's rights to familial association, privacy, and due process. But as explained above, some of the claims are untimely.

f.    Count 6

Count 6 alleges violations of E.B. and J.B.'s rights to familial association, privacy, and due process under the First, Fourth, and Fourteenth Amendments. Compl. ¶ 271. It alleges that the Children were seized without a court order or exigent circumstances. *Id.* ¶ 272. It alleges that E.B. was subjected to unwarranted medical examinations without parental consent or a court order. *Id.* ¶ 276. Count 6 adequately alleges that the Children were deprived of their First Amendment right to live with their parents. It adequately alleges that they were seized in violation of the Fourth Amendment and that E.B. was searched in violation of the Fourth Amendment. The Moving Defendants offer no specific arguments to the contrary.

g.    Count 7

Count 7 alleges that Defendants Abtin, Bray, Fear, Greene, Goodman, and Leikem failed to intervene to prevent the violation of Plaintiffs' constitutional rights. Compl. ¶¶ 282-289. To

allege a failure to intervene, Plaintiffs must allege the violation of a constitutional right and that Defendants had a duty to intercede, which requires showing that there was an opportunity to intercede. *See Tobias*, 996 F.3d at 584. As discussed above, Plaintiffs have adequately alleged several violations of their constitutional rights. However, the Complaint does not explain which violations of those constitutional rights each of the listed Defendants had a duty to intervene to prevent. It conclusorily states: "These Defendants had a duty and reasonable opportunity to prevent this harm to the Blisses, but they failed to do so." *Id.* ¶ 284. These allegations are insufficient. The Court therefore dismisses this count as to the Moving Defendants with leave to amend.

> h.    Count 8

Count 8 alleges conspiracy by all Defendants except Defendant DHS. Compl. ¶¶ 290-300. The Court has explained why the allegations of conspiracy are insufficient. The Court therefore dismisses this claim as to the Moving Defendants with leave to amend.

> i.    Count 9

Count 9 alleges that the Entity Defendants except Defendant DHS are liable based on unconstitutional policies, practices, and customs. Compl. ¶¶ 301-312. To state a § 1983 claim against the Entity Defendants, Plaintiffs must plead that (1) the Entity Defendants acted under color of state law and (2) a constitutional deprivation was caused by an official policy, custom, or pattern of the entity. *Tsao*, 698 F.3d at 1139 (applying *Monell*, 436 U.S. at 691). The Court has already concluded that the Complaint fails on the first requirement for the Hospital Entity Defendants and Defendant Child Eye Care Associates. The Moving Defendants also attack the second requirement. Hospital Defendants argue that the Complaint fails to allege a policy on which to base § 1983 liability. Hospital Def. Mot. 23-24. County Defendants join in this

argument. County Def. Mot. 7. The Eye Care Defendants make similar arguments. Eye Care Def. Mot. 10-11.

"A policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Tsao*, 698 F.3d at 1143 (internal quotations omitted). A custom or practice generally "has not been formally approved by an appropriate decisionmaker" but "is so widespread as to have the force of law." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). A policy, custom, or practice may be one that results in the entity itself violating the plaintiff's rights, or one that, through omission on the part of the entity, results in one of its employees violating the plaintiff's rights. *Tsao*, 698 F.3d at 1143. "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Id.*

> To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to the plaintiff's constitutional right[,] and that the policy caused the violation, in the sense that the [entity] could have prevented the violation with an appropriate policy.

*Id.* (internal citation and quotations omitted). To show deliberate indifference, the plaintiff must show that the entity "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* at 1145 (internal quotations omitted).

Finally, an entity "may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it." *Id.* (internal quotations omitted). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.*

The Complaint enumerates policies that it alleges caused the violations of Plaintiffs' constitutional rights. Compl. ¶¶ 222, 225. It alleges that the Entity Defendants had policies

> of routinely concluding that the "shaken baby syndrome" or "abusive head trauma" hypothesis (SBS/AHT) is the only explanation for the medical condition of infants presenting with subdural hemorrhage despite the absence of evidence necessary to make such a finding; routinely concluding that SBS/AHT is the only explanation for the medical condition of infants presenting with retinal hemorrhage despite the absence of evidence necessary to make such a finding; routinely ignoring the existence of debate and doubt in the medical community concerning SBS/AHT diagnoses; routinely failing to perform tests to rule out SBS/AHT or consider evidence that contradicts an SBS/AHT diagnosis; routinely depriving infants of their rights to informed consent and to have medical decisions made by their parents; routinely accepting the "child abuse pediatrician's" allegations of abuse over test results from the infant's treating providers; and routinely consulting the "child abuse pediatrician" instead of the infant's treating providers.

Compl. ¶ 222.

The Complaint also alleges that

> the Entity Defendants failed to adopt adequate procedural safeguards concerning the suppression of material evidence; the fabrication of evidence; the prosecution of individuals in the absence of probable cause; the interview, interrogation, and coercion of witnesses; and other law enforcement functions that violated the constitutional rights of Nigel, Dayna, E.B., and J.B.

*Id.* ¶ 225. Plaintiffs allege that "[t]he Entity Defendants recognized the need for adequate training of their agents and employees and were deliberately indifferent to the necessity of training regarding investigation, interrogation, and Brady and other obligations." *Id.* ¶ 229. And the Complaint alleges that "[t]he violations of constitutional rights by the individual Defendants were approved of and ratified by the Entity Defendants or by the final policymaker for each respective Entity Defendant such that the actions of the individual Defendants constitute the official policy, practices, or customs of the respective Entity Defendant." *Id.* ¶ 227. Plaintiffs thus allege policies that constitute direct action, inaction or omission, and ratification.

The Court first observes that as currently pleaded, the Complaint alleges that all of the Entity Defendants had (or lacked) the same policies. Further, the allegations in the Complaint are conclusory. The Complaint effectively alleges that all of the misconduct in this case was due to policies of the Entity Defendants, but fails to provide adequate factual allegations supporting that assertion. And because Plaintiffs have failed to clarify which policies or lack thereof are attributable to which Entity Defendants, they have failed to plead that the Entity Defendants were on actual or constructive notice that the omission would result in a constitutional violation, which is necessary for the policies of omission. Nor have they pleaded facts showing ratification.

An example illustrates the deficiencies of the claim as it is pleaded. Through its group pleading, the Complaint alleges that Defendant Child Eye Care Associates failed to adopt policies surrounding the handling of evidence in investigations. However, it fails to allege facts indicating that this Defendant routinely participated in investigations of child abuse, or indeed that it had ever done so prior to this case. Rather, it alleges that Defendant Goodman, an agent of Defendant Child Eye Care Associates, was recruited in this particular matter to perform an examination of E.B. Similar analysis applies when considering some of the medical-specific policies alleged and the County Defendants. Other district courts have dismissed *Monell* claims that were similarly vague or conclusory. *E.g.*, *Nelson v. City of Los Angeles*, No. CV 11-5407-PSG JPR, 2014 WL 6066053, at *15 (C.D. Cal. Nov. 13, 2014) (dismissing *Monell* claim where it conclusorily alleged that defendants authorized use of excessive force and failed to train officers not to use excessive force); *Augustus v. Cnty. of Los Angeles*, No. 220CV11255FLARAOX, 2023 WL 2799117, at *5 (C.D. Cal. Mar. 24, 2023) (dismissing *Monell* claim where it conclusorily alleged that defendants had a policy of seizing children based

on false statements). Plaintiffs must allege facts tending to show a policy or custom in order to state a claim against the Entity Defendants under *Monell*.

In arguing that their *Monell* claim is adequate as to the Hospital Entity Defendants, Plaintiffs point to three groups of allegations. Pl. Resp. Hospital Def. 31. First, Plaintiffs rely on allegations that "[c]hild abuse medical programs similar to CARES Northwest have been investigated for false allegations, overdiagnosis, and overstating their conclusions of child abuse that have resulted in wrongful convictions across the country and innocent parents losing custody of their children." Compl. ¶ 78. The Court cannot infer unlawful action by the Hospital Entity Defendants in this case because other programs have been investigated for misconduct. There are no allegations that these other programs share leadership or policies with or are otherwise connected to the Hospital Entity Defendants. Next, Plaintiffs point to allegations that shaken baby syndrome has been questioned worldwide and was unlikely to be the cause of E.B.'s injuries. *Id.* ¶ 117. But as the Hospital Defendants point out, the Complaint does not allege that Defendants Adewusi and Goodman diagnosed E.B. with "shaken baby syndrome"—it alleges that they reported her injuries were "most consistent with non-accidental trauma." Hospital Def. Reply 23; Compl. ¶ 111. Even if the Court infers that the belief in shaken baby syndrome influenced the diagnosis, that does not lead to a reasonable inference of a policy or practice. Finally, Plaintiffs rely on the funding the Hospital Entity Defendants are alleged to receive from the State or County to investigate child abuse. Compl. ¶¶ 66, 71, 72. The receipt of funding does not support the inference that the Hospital Entity Defendants had the policies or practices alleged.

With respect to Defendant Child Eye Care Associates, Plaintiffs rely on many of the same unavailing arguments as for the Hospital Entity Defendants. Pl. Resp. Eye Care Def. 10-11.

Plaintiffs also point to allegations that Defendant Goodman was recruited because she "was a well-known proponent of the debunked 'shaken baby syndrome' or 'abusive head trauma' hypothesis." Compl. ¶ 110. Plaintiffs assert: "The reasonable inference is that Goodman had been willing to fabricate similar opinions of abuse in the past based on the debunked hypothesis." Pl. Resp. 11. The Court agrees with Eye Care Defendants that this allegation on its own is not enough to state a *Monell* claim. Eye Care Def. Resp. 7. Plaintiffs do not allege that Defendant Goodman previously participated in similar child abuse investigations or fabricated evidence of abuse. And the Complaint does not plead facts tending to show that Defendant Child Eye Care Associates ratified her actions in this case.

With respect to the County Defendants, Plaintiffs rely on the arguments they made in responding to Hospital Defendants' motion. Pl. Resp. County Def. 3 n.2. Plaintiffs point to no facts in the Complaint supporting the inference that the County Entity Defendants had any of the alleged policies. They rely on their conclusory allegations that the policies exist. Accordingly, the Court dismisses Plaintiffs' *Monell* claim as to the Moving Defendants and grants leave to amend. The Court now turns to the sufficiency of Plaintiffs' state-law claims.

      B.     State-Law Claims

            i.     Claim 2

Claim 2 alleges that all Defendants maliciously prosecuted Nigel Bliss. Compl. ¶¶ 315-324. As with the federal malicious prosecution claim, the state-law claim is adequately pleaded as to all Defendants except for Defendant Abtin. Leave to amend is granted.

//

//

//

ii.      Claim 3

Claim 3 alleges wrongful initiation of judicial proceedings against Nigel and Dayna Bliss

by all Defendants based on the dependency proceedings. Compl. ¶¶ 325-333. The elements of

this claim are:

> (1) The commencement and prosecution by the defendant of a judicial proceeding
> against the plaintiff; (2) The termination of the proceeding in the plaintiff's favor;
> (3) The absence of probable cause to prosecute the action; (4) The existence of
> malice, or as is sometimes stated, the existence of a primary purpose other than that
> of securing an adjudication of the claim; and (5) Damages.

*Blandino*, 179 Or. App. at 189.

This tort "is the civil counterpart of a malicious prosecution action." *Lee v. Mitchell*, 152

Or. App. 159, 180, 953 P.2d 414 (1998). The Oregon Court of Appeals has observed that "[t]he

torts are so similar that the legal analysis often is used interchangeably." *Checkley*, 170 Or. App.

at 736 (recognizing active participant liability for wrongful initiation of judicial proceedings

claims). Defendants rely on the same arguments for this claim as for the malicious prosecution

claim, and they fail to the same extent they did for the malicious prosecution claim. The Court

dismisses this claim as to Defendant Abtin only and grants leave to amend.

iii.      Claim 4

Claim 4 alleges civil conspiracy. Compl. ¶¶ 334-344. As discussed above, this claim is

cognizable only as a theory of liability, and Plaintiffs have not adequately pleaded a conspiracy.

The Court dismisses Claim 4 with leave to amend Plaintiffs' allegations on conspiracy on the

understanding that they are not a separate claim for relief but a theory of liability.

iv.      Claim 5

Claim 5 alleges medical malpractice by Defendants Adewusi, Goodman, CARES, RCH,

and Child Eye Care Associates. Compl. ¶¶ 345-351. "The elements of a claim for medical

malpractice include: (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) harm that is measurable in damages; and (4) a causal link between the breach and the harm." *Johnson v. Keiper*, 308 Or. App. 672, 678, 481 P.3d 994 (2021).

The Complaint alleges that Defendants Adewusi and Goodman breached their duty to E.B. when they misdiagnosed her with "abusive head trauma" and "non-accidental trauma." Compl. ¶ 347. It alleges that as a result, "E.B. was taken from her parents, subjected to unnecessary medical interventions, and denied proper treatment and care, including treatment for retinal hemorrhages that worsened into a vitreous hemorrhage leading to long-term complications for E.B.'s vision." *Id.* ¶ 349.

Hospital Defendants argue that the Complaint is devoid of facts suggesting that they caused E.B.'s loss of vision and instead indicates that Defendant Goodman caused this harm. Hospital Def. Mot. 32. And they argue that the other harms alleged, loss of familial association and emotional distress, are respectively too attenuated and insufficiently pleaded. *Id.* at 32-33. Plaintiffs respond that their pleadings meet the requirements of Rule 8. Pl. Resp. 46. Hospital Defendants are correct with respect to loss of vision, as the Complaint alleges that E.B.'s vision complications were due to Defendant Goodman's misconduct. Compl. ¶ 137. The other harms Plaintiffs allege arise from the dependency proceedings. The Complaint alleges that "Defendant Goodman worked with Defendant Adewusi to fabricate additional evidence, including a report of observing retinal hemorrhages that were 'most consistent with non-accidental trauma' upon examining E.B. after Defendant Abtin's surgery." *Id.* ¶ 111. However, the Complaint does not allege facts indicating that this reporting was a but-for cause of the emotional distress and familial separation damage E.B. suffered. Thus, Plaintiffs have failed to plead the causation

element for the Hospital Defendants or the Eye Care Defendants for that harm. *See Johnson*, 308 Or. App. at 680 (plaintiffs in negligence claims must show but-for causation).

The Eye Care Defendants argue that Plaintiffs have failed to allege a breach of the standard of care or causation. Eye Care Def. Mot. 15-16. Plaintiffs counter that Eye Care Defendants are improperly disputing the veracity of the allegations in the complaint. Pl. Resp. Eye Care Def. 13-14. The Complaint alleges that "Defendant Goodman failed to conduct testing to determine why E.B. had retinal hemorrhages in one eye but not the other, and failed to schedule appropriate follow up care or monitor E.B.'s eye for potential vitrectomy." Compl. ¶ 136. This alleges a breach of the standard of care. The Complaint alleges that E.B. suffered a vitreous hemorrhage that caused "complications with E.B.'s vision because it had not been monitored or treated appropriately due to Defendant Goodman's misconduct." *Id.* ¶ 137. This alleges causation. The Complaint adequately alleges medical malpractice against the Eye Care Defendants to the extent that it challenges the testing and monitoring of E.B.'s vision and subsequent damage to her vision. It otherwise fails to state a claim because it relies on conclusory allegations of causation. *See* Compl. ¶ 349. The Court therefore denies the Eye Care Defendants' motion to dismiss the claim as to the alleged inadequate testing and follow-up care of E.B.'s eye, but otherwise grants the motion. The Court grants the Hospital Defendants' motion to dismiss this claim. The Court grants leave to amend as to both the Hospital Defendants and the Eye Care Defendants.

        v.      Claim 6

Claim 6 alleges negligent training and supervision by the Entity Defendants. Compl. ¶¶ 352-359.

Under Oregon law, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of

liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Rhodes v. U.S. W. Coast Taekwondo Ass'n, Inc.*, 273 Or. App. 670, 678, 359 P.3d 1196 (2015)

(quoting *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734

P.2d 1326 (1987)). If there is no special relationship, a complaint for negligence

must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267, 274-75, 261 P.3d 1272 (2011) (internal

quotations omitted). With or without a special relationship, foreseeability is important to the

analysis. *Rhodes*, 273 Or. App. at 678. Oregon courts have applied these principles to claims of

negligent training and negligent supervision. *Id.* at 678-83 (evaluating whether it was foreseeable

to defendant, the previous operator of a swimming pool, that plaintiff would be injured

swimming in the pool due to the defendant's poor safety practices shortly after the pool was

transferred to new management); *see also Dodd v. AA & S Corp.*, No. 3:17-CV-00246-AC, 2017

WL 4020426, at *2 (D. Or. Aug. 25, 2017), *findings and recommendation adopted*, No. 3:17-

CV-00246-AC, 2017 WL 4012957 (D. Or. Sept. 12, 2017) (applying *Stewart* to negligent

training and supervision claims).

The Court first notes that the Complaint alleges that E.B. had a physician-patient

relationship with respect to the Hospital Entity Defendants and Defendant Child Eye Care

Associates. *See* Compl. ¶¶ 55-62, 111-113. This constitutes a special relationship under Oregon

negligence law. *See Tomlinson v. Metro. Pediatrics, LLC*, 362 Or. 431, 443, 412 P.3d 133

(2018); *Jones v. Emerald Pac. Homes, Inc.*, 188 Or. App. 471, 477, 71 P.3d 574 (2003). No such relationship is apparent for the other Plaintiffs, and no special relationship is alleged with respect to the County Defendants.

The Eye Care Defendants argue that Nigel and Dayna Bliss cannot recover under this claim because they did not suffer any physical injury. Eye Care Def. Mot. 16-17. Oregon law restricts the recovery of damages for negligently inflicted emotional distress. *Philibert v. Kluser*, 360 Or. 698, 702, 385 P.3d 1038 (2016). In general, plaintiffs may recover emotional distress damages when they are physically injured, when the defendant acted intentionally, and "when a defendant negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest." *Id.* The legally protected interest must be more than the general duty to avoid a foreseeable risk of harm and must be important enough as a matter of public policy to justify recovery of emotional distress damages. *Id.* at 704-05. The Oregon Supreme Court has held that under some circumstances, parents may have a claim against their child's physician even if they allege only emotional and economic harms. *Tomlinson*, 362 Or. at 443-47. This determination depends on the circumstances of the case. *Id.* at 446. The Court declines to resolve this issue because the claim as pleaded fails for other reasons that must be addressed first.

The County Defendants correctly observe that the allegations specific to Claim 6 are conclusory and thus insufficient to state a claim. County Def. Mot. 7. However, in the preceding paragraphs, which are incorporated by reference, Plaintiffs do allege somewhat more specific failures of training and supervision. They allege that the Entity Defendants failed "to provide training and implement safeguards for cases in which SBS/AHT is alleged." Compl. ¶ 223. And they allege that the Entity Defendants trained and encouraged "their respective agents and

employees to ignore or reject non-abuse explanations for medical symptoms and conditions, or to treat alternative explanations for a child's medical symptoms or condition as conspiracy theories." *Id.* ¶ 224. Finally, they allege inadequate procedural safeguards surrounding the handling of witnesses and evidence. *Id.* ¶ 225.

The allegations in the Complaint do not distinguish between the Entity Defendants in pleading deficient policies and practices or failures of training and supervision. The Complaint fails to clarify what training and supervision should have been given to the various individual Defendants, who include state law-enforcement officials as well as private physicians, a social worker, and an ophthalmologist. For instance, the Complaint does not plead facts suggesting that all of the individual Hospital Defendants and Eye Care Defendants needed training on the interviewing of witnesses, but as pleaded, it appears to allege that such training was necessary.

Plaintiffs point to *Tarkington v. County of Los Angeles*, No. CV 18-07636-CJC-JC, 2019 WL 1744214, at *7 (C.D. Cal. Mar. 5, 2019) as evidence that their pleadings are adequate. Pl. Resp. County Def. 10 n.44. In *Tarkington*, the district court concluded that the plaintiff had stated a claim for negligent training and supervision by Los Angeles County under California law by alleging that the County knew that some of its employees had falsified evidence and failed to adequately discipline them for doing so. 2019 WL 1744214, at *7. *Tarkington* involved county defendants only. *See id.* at *1. It does not help Plaintiffs overcome the vagueness of their pleadings. Because the Complaint does not adequately explain the failures of training and supervision for each Entity Defendant, the Court dismisses Claim 6 with leave to amend.

vi.    Claim 7

Claim 7 alleges IIED by all Defendants. Compl. ¶¶ 360-365.

To properly plead a claim of IIED, a plaintiff must allege facts sufficient to demonstrate that the defendant: (1) intentionally—*i.e.,* that the defendant intended

to cause or knew with substantial certainty that his or her conduct would cause severe emotional distress; (2) engaged in outrageous conduct—*i.e.,* conduct that was an extraordinary transgression of the bounds of socially tolerable behavior; and (3) caused the plaintiff severe emotional distress-*i.e.,* the defendant did in fact cause the plaintiff emotional distress that was severe.

*Checkley*, 170 Or. App. at 726.

The County Defendants argue that the claim relies entirely on conclusory allegations. County Def. Mot. 7. The Eye Care Defendants argue that the Complaint fails to allege an intent to cause severe emotional distress or outrageous conduct. Eye Care Def. Mot. 18. And the Hospital Defendants assert that Plaintiffs have pleaded no facts showing that E.B., who was an infant during her stay at the hospital, suffered emotional distress. Hospital Def. Mot. 33. The County Defendants are correct that the claim itself relies on conclusory language. The claim also incorporates the preceding 359 paragraphs of the Complaint. The Complaint effectively alleges that all acts by Defendants constitute IIED. *See* Compl. ¶¶ 360-361. To the extent that Plaintiffs allege that the prosecution of Nigel Bliss and the initiation of dependency proceedings against Nigel and Dayna Bliss, based on false evidence of abuse, constitute outrageous conduct, they have adequately alleged that element. *See Checkley*, 170 Or. App. at 726-27 (allegations that defendants brainwashed the plaintiff's brother into believing the plaintiff was abusing him as part of an effort to have the plaintiff removed as his brother's legal guardian satisfied the outrageousness element of IIED).

With respect to the intent element, the Complaint does not allege that Defendants intended to cause emotional distress, but it does adequately allege that the Defendants knew with substantial certainty that their conduct would cause emotional distress. The Complaint alleges that the various Defendants fabricated allegations that Nigel Bliss physically abused his daughter E.B., pressured Dayna to implicate her husband as an abuser, and separated E.B. and J.B. from

their parents. Under the circumstances alleged, if true, Defendants would be substantially certain that their actions would cause the Bliss family severe emotional distress. Finally, while the Court agrees with the Hospital Defendants that it is implausible to allege that an infant suffered embarrassment or humiliation, it is plausible to allege that E.B. suffered another form of emotional distress when she was separated from her parents. The Court will not dismiss Claim 7.

vii.     Claim 8

Claim 8 alleges tortious interference with family relationships. Compl. ¶¶ 366-373. As discussed above, the claim is not cognizable as pleaded, but is cognizable to the extent that it alleges tortious interference with Nigel and Dayna Bliss's right to custody of their children. The claim is otherwise adequately pleaded, and the Court grants leave to amend the claim consistent with this Opinion. The Court now turns to the Moving Defendants' other Rule 12 motions.

**IV.    Motion to Strike**

The Eye Care Defendants move to strike counts 2, 3, 4, 7, 8, and 10 of Claim 1 if the Court does not dismiss those counts. Eye Care Def. Mot. 2. The court may order stricken from a pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f). Granting a motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), *aff'd*, 608 F.3d 1084 (9th Cir. 2010); *see also Capella Photonics, Inc. v. Cisco Sys., Inc., 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014)* ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and

because they are often used solely to delay proceedings.") (quotation marks and alterations omitted).

The Court considers the motion with respect to counts 2, 3, 4, 7, and 8, as it has already dismissed count 10. Eye Care Defendants argue that counts 2, 3, 4, and 7 are redundant of count 1, and that count 8 is redundant of the lengthy conspiracy allegations elsewhere in the Complaint. Eye Care Def. Mot. 5. Eye Care Defendants' first argument has some merit, as many allegations in counts 1, 2, 3, and 4 appear to be repetitive of each other. For instance, both counts 1 and 3 allege suppression of exculpatory evidence. *See* Compl. ¶¶ 233, 250. This Court will take the approach some district courts have taken and decline to strike the allegations, instead treating them as stating the same cause of action under more than one count. *E.g.*, *Sagan v. Apple Comput., Inc.*, 874 F. Supp. 1072, 1080 (C.D. Cal. 1994). To the extent that Plaintiffs intended to allege different conduct or violations of different constitutional rights with the apparently repetitive allegations, they may amend counts 1, 2, 3, and 4 to clarify their pleadings. The Court does not deem count 7 redundant because it states an alternate theory of liability.

With respect to count 8, the Court has already held that conspiracy is a theory of liability rather than a cause of action. The Court agrees with Eye Care Defendants that the allegations in count 8 are largely redundant of earlier, more detailed conspiracy allegations in the Complaint. The Court still declines to strike count 8. Although conspiracy is not a separate cause of action under § 1983, the allegations serve to advise that Plaintiffs seek to prove liability through conspiracy in their § 1983 claim. They do not prejudice Defendants because the Court has already confirmed that the allegations do not on their own state a cause of action. In sum, the Court will not strike any redundant allegations from the Complaint.

## V.    Motion for More Definite Statement

The County Defendants and Eye Care Defendants move for a more definite statement. County Def. Mot. 10-11; Eye Care Def. Mot. 19-20. "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Id. "Rule 12(e) motions are disfavored and rarely granted." Conta v. City of Huntington Beach, No. 821CV01897JLSKES, 2022 WL 3574439, at *2 (C.D. Cal. June 22, 2022) (internal quotations omitted). "Most motions for a more definite statement are based on either lack of detail or unintelligibility." Id. So-called "shotgun pleadings," which "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff['s] allegations" may be deemed unintelligible. Id. (internal quotations omitted). "A common type of shotgun pleading occurs in cases with multiple defendants where a plaintiff's pleading uses the term 'defendants' without identifying what the particular defendants specifically did wrong." Id. (internal quotations omitted).

Eye Care Defendants assert that "[a]t present, the Complaint is a 'shotgun pleading' because it intermixes allegations against all of the various defendants and does not clearly state which facts support the specific claims brought against each defendant." Eye Care Def. Mot. 19. County Defendants raise similar concerns. County Def. Mot. 10-11. Eye Care Defendants particularly seek clarification for Claim 1, arguing that the current pleading will impede evaluation of the accrual of the statute of limitations. Eye Care Def. Mot. 19-20. Plaintiffs

oppose the motion, asserting that group pleading is proper where multiple defendants are alleged to have engaged in the same conduct. Pl. Resp. Eye Care Def. 21.

In a case similar to this case, involving both government and private defendants, another court in this district concluded that group pleading was not proper where the various defendants were not alleged to have "engaged in precisely the same conduct." *McGuffin v. Dannels*, No. 6:20-CV-01163-MK, 2021 WL 4453106, at *4 (D. Or. July 27, 2021), *findings and recommendation adopted*, No. 6:20-CV-01163-MK, 2021 WL 4449975 (D. Or. Sept. 28, 2021). Other district courts have granted motions for a more definite statement where a mix of government entities and private parties are alleged to have contributed to the same violations of constitutional rights or engaged in the same course of tortious conduct. *E.g.*, *Conta*, 2022 WL 3574439, at *4 (granting motion for more definite statement because "the causes of action fail to connect the law and facts and they fail to connect either to the specific defendant(s) involved").

The Court concludes that the motion should be granted as to some of Plaintiffs' claims. In particular, the allegations regarding policies and practices of the Entity Defendants and failures of training and supervision by the Entity Defendants are too vague for those Defendants to reasonably respond. *See* Compl. ¶¶ 222-230, 301-312, 352-359. As discussed above, the Complaint fails to link the policies alleged to each of the Entity Defendants, which range from the County to private medical providers. The adequately pleaded facts in the Complaint do not indicate that all of the Entity Defendants engaged in precisely the same conduct. Under the circumstances, the pleadings are inadequate "shotgun pleadings." Likewise, allegations of failure to intervene are too vague for the listed Defendants to reasonably respond. *See* Compl. ¶¶ 282-289. Plaintiffs have not adequately linked the factual allegations in the Complaint to the listed Defendants for those claims.

Some of the § 1983 claims also fail to adequately explain how each Defendant is alleged to have violated Plaintiffs' constitutional rights. Count 1 incorporates the preceding allegations by reference and alleges that "the Defendants, while acting individually, jointly, or in conspiracy with each other, as well as under color of law and within the scope of their employment, deprived Nigel of his constitutional rights under the First and Fourteenth Amendments, including his rights to familial association, privacy, and due process." Compl. ¶ 232. While count 1 contains some specific allegations of how some Defendants violated Plaintiffs' rights, it does not clarify the alleged violations of the right to privacy and by whom they were committed. Count 5 suffers from the same problem. *See* Compl. ¶ 261. Plaintiffs must clarify their pleadings to allow Defendants to respond.

## CONCLUSION

The Moving Defendants' Motions to Dismiss [40], [49], [52] are GRANTED IN PART and DENIED IN PART. County Defendants' and Eye Care Defendants' Motions for a More Definite Statement [49], [52] are GRANTED IN PART. Eye Care Defendants' Motion to Strike [52] is DENIED. Hospital Defendants' Request for Judicial Notice [41] is DENIED. Plaintiffs are instructed to file an Amended Complaint consistent with this Opinion within 21 days.

IT IS SO ORDERED.

DATED:  October 18, 2023  .

MARCO A. HERNÁNDEZ
United States District Judge

65 – OPINION & ORDER